## Cameron's Account.

*Trust companies—Insolvency—Distribution of assets —Priorities—Subscription to stock of national banks—Act of May 23, 1913, P. L. 354—Constitutional law—Corporations—Conflict with federal laws—Act of Congress of December 23, 1913, 38 Stat. at L. 273.*

1. The provisions of the Act of May 23, 1913, P. L. 354, giving to depositors of trust companies, priority on distribution of its assets in the course of liquidation by legal process or otherwise, is

not unconstitutional, under that part of article III, section 7, of the state Constitution, which forbids the passage of local or special laws providing or changing methods for the collection of debts.

2. A state statute which attempts to define the duties of national banks, or to control the conduct of their affairs, is void whenever it conflicts with the laws of the United States, or impairs the efficiency of the bank to discharge the duties for which it was created; but state statutes which do not have this effect are valid and binding.

3. A state statute which is in effect a fraud on a federal statute, will not be sustained, but a state statute which simply provides for priorities on distribution, does not offend this rule, if such preferences are based on substantial reasons.

4. Substantial reasons exist for a preference to depositors of a state banking institution, when its assets are being liquidated; hence, in the absence of a controlling federal statute, the state has a right to direct such preference, even though the claims of some of the unpreferred creditors arise under federal laws.

5. Section 23 of the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 273, which declares that the stockholders of every national banking institution shall be individually responsible for all its contracts, debts and engagements, to an additional sum equal to the par value of the stock owned by them, establishes the liability of such stockholders, but has no effect on exemptions allowed to the debtor by a state statute, or to preferences given, for substantial reasons, to other creditors of his, on liquidation of his assets by process of law.

6. The depositors of an insolvent trust company are entitled, under the Act of May 23, 1913, P. L. 354, to priority on distribution of its assets in the course of liquidation by legal process or otherwise, as against the claim of a receiver of a national bank, under section 23 of the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 273, to recover the amount of the liability of the trust company, as a stockholder of the bank.

7. Unless it is expressly declared otherwise, the statutory rights of a debtor are not affected by the method employed by a creditor to collect his claim.

Mr. Justice KEPHART dissented.

Argued October 4, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 115, March T., 1926, by M. R. Kevil, Receiver of the First National Bank of Carnegie, from

order of C. P. Allegheny Co., July T., 1925, No. 663, dismissing exceptions to account of Peter G. Cameron, Secretary of Banking, in possession of the assets of the Carnegie Trust Co., in the matter of Cameron's Account. Affirmed.

Exceptions to account of Peter G. Cameron, Secretary of Banking, in possession of the assets of the Carnegie Trust Co. Before Evans, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. M. R. Kevil, Receiver of the First National Bank of Carnegie, appealed.

*Error assigned* was, inter alia. decree, quoting record.

*Wm. S. Moorhead,* of *Moorhead & Knox,* with him *M. H. Ewing,* for appellant.—The Act of 1913, preferring claims of depositors or trust companies in liquidation cannot be applied against assessments on stock in national banks: Christopher v. Norvell, 201 U. S. 216; M'Culloch v. Maryland, 4 Wheaton 316; First Nat. Bank of San Jose v. California, 262 U. S. 366; Davis v. Savings Bank, 161 U. S. 275; Farmers & Mechanics Nat. Bank v. Dearing, 91 U. S. 29; Allen v. Carter, 119 Pa. 192.

The Act of 1913 is a special act, providing or changing methods for the collection of debts, in violation of article III, section 7, of the Constitution of Pennsylvania: Sax v. School Dist., 237 Pa. 68; Laplacca v. Transit Co., 265 Pa. 304; Vulcanite Paving Co. v. Transit Co., 220 Pa. 603; Strine v. Foltz, 113 Pa. 349.

*Leonard K. Guiler,* with him *E. Lowry Humes* and *Homer N. Young,* for appellees.—The Act of May 8, 1907, P. L. 192, as amended by the Act of May 23, 1913, P. L. 354, creates a valid preference in favor of depositors of a trust company in liquidation who are entitled to priority of payment before a claim for an as-

sessment on stock owned by the trust company in a national bank: Studebaker v. Perry, 184 U. S. 258; Jones's Est., 84 Pa. Superior Ct. 170; Com. v. Lewis, 6 Binney 266; Gregory's Est., 11 Phila. 126; McDonald v. Thompson, 184 U. S. 71.

The Act of 1907, as amended by the Act of 1913, is not a special act providing or changing methods for the collection of debts, in violation of article III, section 7, of the Constitution of Pennsylvania: Prudential Trust Co.'s Assignment, 223 Pa. 409.

The Act of 1907 has been before this court in the following cases: Com. v. Trust Co., 241 Pa. 153; Com. v. Trust Co., 250 Pa. 372; Fisher v. Davis, 278 Pa. 129; Prudential Trust Co.'s Assignment, 223 Pa. 409.

The Act of 1913 was also before this court in Fisher v. Davis, 278 Pa. 129.

In none of these cases was any question raised as to the constitutionality of the Acts of 1907 and 1913.

OPINION BY MR. JUSTICE SIMPSON, December 6, 1926:

The Carnegie Trust Company was incorporated by and was subject to the laws of Pennsylvania, one of which provides "that, in case of any distribution [of the assets of such a company]......in the course of its liquidation by legal process or otherwise," priority is to be given to the claims of depositors. The First National Bank of Carnegie was organized under the acts of Congress relating to national banks, one of which provides that for its "contracts, debts and engagements" each stockholder shall be individually responsible "to the amount of his stock therein, at the par value thereof, in addition to the amount invested in such stock." Both institutions became insolvent, and, on the same day, finally closed their doors. The trust company in accordance with the laws of the State, passed into the control of the secretary of banking, and its affairs are being wound up by that official. The bank, in accordance with the acts of Congress, passed into the control of the comp-

troller of the currency, and a receiver appointed by him is winding up its affairs. In due course, the comptroller assessed against the stockholders of the bank, one of whom was the trust company, the additional liability above referred to, and directed the receiver to take all necessary steps to collect the amounts.

The secretary of banking having collected and converted into cash a portion of the assets of the trust company, filed his first and partial account thereof, together with a schedule of distribution of the balance shown thereby. He allowed the claim of the receiver as a debt due by the trust company, but refused to award him a share in the amount then for distribution, because that fund was insufficient to pay the depositors of the trust company in full. The receiver did not object to the partial account, but filed exceptions to the schedule of distribution on two grounds: (1) that the statute which directed a preference to be given to depositors, violates article III, section 7, of the state Constitution; and (2), in so far as it attempted to give such a preference, the statute is void, because in antagonism to section 23 of the Federal Reserve Act of 1913. The court below dismissed the exceptions and entered a decree awarding the net balance to the depositors pro rata. From this, the receiver appeals, and renews in this court his objections as above stated.

So far as relates to the alleged unconstitutionality of the Act of May 23, 1913, P. L. 354, 355, but little need be said. The constitutional provision alleged to be infringed, provides that "The General Assembly shall not pass any local or special law......providing or changing methods for the collection of debts." If the statute declared that a depositor should have a special compulsory remedy against the trust company, through the appointment of a receiver or otherwise, as a means of *collecting* his debt, it might well be held to be within the constitutional inhibition. But the Act of 1913 gives no such right. It simply says "That, in case of any dis-

tribution of the money......of any trust company, in the course of its liquidation by legal process or otherwise, distribution shall be made and preferred in the following order, namely: First, To the payment of all depositors in the trust company......" Many statutes provide for such preferences on distribution, and no one has contended until now, so far as we are aware, that they are constitutionally forbidden. Rent claims, wage claims, debts due to the United States and the State, are familiar instances in which preferences on distribution were allowed long before the adoption of the Constitution of 1874, and then, as now, met with a practically unanimous approval. It is not to be supposed that the people intended to prevent the passage of any other such acts, when a real reason for the preference is made to appear. It is rather to be believed that the intention was that no debtor, or class of debtors, should have imposed on him or them, by legislation, a method for the collection of his or their alleged debts, which is not common to all other debtors of the same general character. This being so, the Act of 1913 does not infringe the constitutional provision.

Appellant's second claim that the Act of 1913, in so far as it gives, on distribution, a preference to depositors, is void, because in antagonism to section 23 of the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 273, is based entirely on the following language from that section: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts and engagements of such association, each to the amount of his stock therein, at the par value thereof, in addition to the amount invested in such stock." The receiver contends that this entitles him to share pari passu with the depositors, and apparently, though not explicitly, claims a preference over all other creditors. He repeatedly states that he does not claim a right paramount to the depositors, but on what line of reasoning this limitation rests is not stated, and is not

known to us. If that provision of the Federal Reserve Act is valid for the purpose claimed, it must be because Congress has the power, and has thereby exercised it, to give to debts due a national bank, a status over and above all other obligations of the stockholder. Appellee in terms concedes the existence of the power, but denies that it has been exercised, and in this conclusion we agree.

Appellant's contention, oft repeated, is that national banks are instrumentalities of the National Government, and hence state laws are void which may affect such banks, even indirectly and remotely. This proposition is stated too broadly. Of course, to the extent that the National Government has spoken, the door is closed to any action by a state. The true rule is that "Any attempt by a state to define their [a national bank's] duties, or control the conduct of their affairs, is void whenever it conflicts with the laws of the United States,......or impairs the efficiency of the bank to discharge the duties for which it was created": First National Bank of San Jose v. California, 262 U. S. 366, 369; Davis v. Elmira Savings Bank, 161 U. S. 275, 283; First National Bank in St. Louis v. State of Missouri ex rel., 263 U. S. 640. Eo converso, a state statute which does not define the duties or control the conduct of a national bank's affairs, and does not conflict with the laws of the United States, or impair the efficiency of the bank to discharge its duties, is valid. On this rock appellant's contention is wrecked. The state statute under consideration, which gives a preference to the depositors of a trust company, cannot possibly offend against the foregoing rule, merely because,—and this is the only effect of section 23 of the Federal Reserve Act,—a national bank may become a creditor of a trust company, if it owns stock of the bank. It requires a very wide stretch of the imagination to even guess that Congress intended to prevent a state from declaring the order in which the assets of one of its creatures shall be

distributed, in case a national bank should become a creditor. Far less is it possible to conceive that, by the Federal Reserve Act, Congress intended not to give the receiver of the bank a preference over all other creditors of the state corporation, but only to place him on the same plane with the most favored of such creditors.

If Congress had so intended, it could easily have said so, but it did not. There is not, in the language quoted from the Federal Reserve Act, the slightest hint of such an intention. When it purposed to give priority, Congress found no difficulty in expressing its intention. Thus, section 3466 of the Revised Statutes of the United States, provides that "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied." Notwithstanding the broad language of this section, it has been held that the states have power to pass laws, allowing exemptions to debtors, which shall take preference over a debt due to the United States: Fink v. O'Neil, 106 U. S. 272; Jones's Est., 84 Pa. Superior Ct. 170. This conclusion was reached because of section 916 of the Revised Statutes, which reads as follows: "The party recovering a judgment in any common law cause, in any circuit or district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the state in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such state in relation to remedies on judgments, as aforesaid, by execution or otherwise." It is true the proceedings in the present instance have not been by way of suit and judgment, as normally they

would have been, since the whole amount of the statutory liability is sought to be recovered (Kennedy v. Gibson, 8 Wall. 498; Studebaker v. Perry, 184 U. S. 258), but it would hardly be claimed, because the State does not require a judgment to be recovered before the claim is presented, that this operates to enlarge the right of the receiver. Unless it is expressly declared otherwise, and it is not here, the statutory rights of a debtor are not affected by the method employed by a creditor to collect his claim. It should be added that the District Court of the United States for the Western District of Pennsylvania, where both institutions were located, did adopt a general rule, as provided by section 916 of the Revised Statutes, above quoted, giving to judgment creditors "similar remedies......by execution or otherwise to reach the property of the judgment debtor, as are now provided in like cases by the laws of the State of Pennsylvania."

Evidently, when Congress said that the "stockholders of every national banking association shall be held individually responsible for all contracts, debts and engagements of such association," it meant just what it said, and no more. Of course, if that which the State attempted, was, in effect, a fraud on the federal statute, the action by the State would fall; but this is not pretended here. The preference given to depositors has back of it a substantial reason. For a long series of years, in all common law countries, certain classes of creditors have been given a preference on distribution. If the receiver's claim is valid, it would be so, also, if the preferred creditor was the landlord of the bank building, an employee of the bank, or a mechanic's lien claimant. The underlying basis for such preferences is that the use of the landlord's property, of the employee's labor and of the builder's labor and materials, made possible the assets to be distributed. Depositors, in the nature of things, are also in a preferential class. Without them a banking insti-

tution would perish from dry rot. "The success of almost all commercial banks depends on their ability to obtain loans from depositors": First National Bank of San Jose v. California, 262 U. S. 366, 370. Hence, the preference to depositors was given in order to induce those having funds to deposit them.

The public policy of the State in favor of depositors contravenes no public policy of the Nation, so far as we have been advised, or are aware. On the contrary, the double liability of stockholders of national banks, was imposed by Congress for the same reason. True, if the receiver's claim is sustained, the depositors of the bank would, in the present instance, be benefited, but this circumstance is purely fortuitous, growing out of the fact that this receiver has no claim save for the amount of the assessment. The next claim may be by a receiver as depositor, and, in that event, the creditors of the bank would be benefited. Such chance circumstances play no part in determining the intention of Congress.

Like counsel for the respective parties, we have found no authority directly on the point involved here, possibly because no one has heretofore supposed that an act of Congress which is, by its terms, limited to declaring the right to recover a judgment or decree fixing a liability, has any determinative influence in the matter of distribution of the assets of the debtor, in the course of their liquidation by the courts; but we have found expressions which bear out the conclusion reached in this opinion. Thus, in Davis v. Elmira Savings Bank, 161 U. S. 275, it appeared that by the laws of New York, —where the national bank was located,—deposits by savings banks were given preference on distribution of the assets of insolvent banks. It was sought, by a savings bank, to enforce this preference against the assets of a national bank in the hands of a receiver. The right thereto was denied because it was directly antagonistic to the act of Congress, which,—beyond giving a preference to the United States, to cover possible losses when

national bank notes had been issued,—directed that the balance of the assets should be divided ratably among all the creditors of the bank. As the federal law was paramount, the savings bank's claim was necessarily overruled. The Supreme Court was careful to say, however, that its conclusion was reached solely on the ground of the conflict between the state and federal statutes, adding (page 283), "If there be no conflict, the two laws, can coexist and be harmoniously enforced"; and (page 289), "True it is that where, by state law, a lien is made to result from a particular contract, that lien, when its existence is not incompatible with the act of Congress, will be enforced." In the instant case, presumptively, the depositors became creditors of the trust company in reliance upon the statutory provision that they should have a first lien on the assets in case of insolvency.

So, too, when it was sought in Peters v. Bain, 133 U. S. 670, to set aside an assignment for the benefit of creditors, made by stockholders of an insolvent national bank, on the same ground as that made by the receiver in this case, the Supreme Court of the United States held that the assignment was good unless shown to be fraudulent in fact, and added (page 692) that the bank's creditors had "the same right to insist upon their payment [i. e. by the stockholders under the double liability provision] as upon the payment of any other debt due to the corporation." It would hardly be claimed that as against "any other debt," the provision for a priority to depositors would not be valid.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

Does a state law, giving preference to the claims of depositors of an insolvent state bank or trust company over that of the receiver of a national bank for the par value of the stock held by the insolvent state institution, as provided by act of Congress, constitute an interfer-

ence with the laws of Congress enacted to carry into effect the powers vested in the general government? Appellant contends that section 1, of the Act of May 23, 1913, P. L. 354, quoted in the majority opinion, conflicts with section 23, of the Federal Reserve Act (U. S. Comp. St. 1916, section 9689).

Congress has the power under the Constitution to create and regulate banks, and, when that power has been exercised, the "States have no power, by taxation or otherwise, to retard, impede, burden, or, in any manner, control the operation of constitutional laws enacted by Congress to carry into execution powers vested in the general government": McCullough v. Maryland, 4 Wheat. 316, 436. The same doctrine was reaffirmed in Weston v. The City of Charleston, 2 Pet. 449, where it is stated that any sensible influence on the power has a tendency to defeat its free exercise. The extent of that influence if exercised by a state, no matter how small or inconsiderable it may be, is a burden on the operation of the government. It may be carried to such an extent as to arrest the national power entirely. In taxing federal banks, it was said that, if the power to tax was admitted for the slightest purpose, it would be an invitation to exercise the power to destroy: McCullough v. Maryland, supra.

National banks, although their shares of stock may be private property, are instrumentalities of the general government in the conduct of its affairs: Christopher v. Norvell, 201 U. S. 216, 225. The statutory liability of the holders of national bank stock was created by Congress for the protection of creditors, to strengthen the bank in the confidence of the public. National banks are established for the purpose of creating a currency and a market for loans: Michie on Banks, vol. 3, page 1778. It is that institution the government protects directly, though indirectly this protection may be of value to the shareholder and to the depositor; their rights, however, in this respect, are unimportant, in

dealing with the real purpose of the legislation, which was to protect the national bank system.

Having these thoughts in mind, let us examine the majority opinion which holds that the state has done no "act that impairs the efficiency of the bank to discharge the duties for which it was created": First National Bank v. California, 262 U. S. 366, 369. The trust company owns 93 per cent of the stock of the national bank. As the trust company is insolvent, the receiver will get nothing. It is true that the duties of the Carnegie National Bank, and of any other such bank which invokes the double liability provision, may be at an end, as far as that particular bank is concerned, if the law is valid, so that the state law does not interfere with the efficient discharge of these duties. We overlook the real purpose of the double liability law; it is to protect the national bank system by not permitting such burdens to be placed on it, or laws which can make such contingency possible.

The direct obligation of the trust company, as a shareholder in the national bank, is to the receiver. In First National Bank v. California, supra, Mr. Justice McReynolds said (p. 370): "The success of almost all commercial banks depends upon their ability to obtain loans from depositors." One of the strongest assets to secure depositors and carry on, possessed by national banks, is the feature of a stockholder's double liability. If the state may take away that security or diminish its effectiveness, the act is a direct interference with the whole national bank system. Other states may pass similar legislation, or on subjects akin to it.

We cannot view the question from the standpoint of what Congress has not done to further protect national banks, by forbidding the states to make it impossible for the federal authorities to enforce the law. Section 23 of the act of Congress did create a double liability to be paid by the stockholders where its capital was impaired. Must Congress announce in express language that no state shall interfere with this exercise of authority by

exempting such shareholders from liability? In First National Bank v. California, supra, where a state law provided for the escheat of bank deposits unclaimed for twenty years, the court held the act unconstitutional as applied to national banks, and said (p. 270): "If California may thus interfere, other states may do likewise; and, instead of twenty years, varying limitations may be prescribed—three years, perhaps, or five, or ten, or fifteen. We cannot conclude that Congress intended to permit such results. They seem incompatible with the purpose to establish a system of governmental agencies specifically empowered and expected freely to accept deposits from customers irrespective of domicile with the commonly consequent duties and liabilities." Congress has spoken; the question is not what it has left undone, but what a state has done to prevent the effective operation of its laws within a legitimate field of legislation. Congress by this section did not attempt to direct the order of distribution of the assets of a state institution, but it plainly said the liability of stockholders in national banks must not be interfered with.

It is no answer to say that section 23 would give the receiver of a national bank, in right of his depositors, a preference over other creditors or general creditors. If that be true, Congress did not create the situation. The State knew of the federal law when its statute was enacted, the operation of which destroys the strength and security of national banks. Depositors of the state institution gain at the expense of those of the national one, even though the latter may be the federal government, through postal or savings deposits, or other deposits of government funds.

The majority opinion states that depositors in the nature of things are in a preferential class like landlords, employees or mechanics, on the theory that their loans made possible the assets; and failure of deposits would cause banking institutions to perish from dry rot. This same argument could be used in almost every business

depending ordinarily on borrowed capital. While it is true that, under the common law, preferences have been allowed, these are the exceptions to the general rule that all creditors should share equally in their debtor's estate. Still priorities cannot be created that violate the Constitution. Since interference with institutions created by Congress is such a violation, the preference given to depositors of insolvent banking institutions is unconstitutional as applied to national banks.

The act is invalid on other constitutional grounds. It is readily conceded that states have exclusive jurisdiction and sovereignty over persons and property within their borders (Pennoyer v. Neff, 95 U. S. 714, 722, 724, where the duty of the State to protect its citizens was stressed); but it is equally clear that under section 1 of Amendment XIV of the federal Constitution, the State is under duty to accord the same privileges or protection to creditors who are citizens of other states and to creditors in the State who are of equal claim or class: Blake v. McClung, 172 U. S. 239, 248. There the assets of a corporation were in course of administration by the courts of the State. It was held that creditors who were citizens of other states or the United States were entitled, under the Constitution, to stand on the same plane with creditors of like class who are citizens of such states. This receiver represents depositors of a national bank who were entitled to be treated on an equal basis with depositors of the state bank.

Let us see whether the state act violates the Fourteenth Amendment. No state shall "deny to any person within its jurisdiction the equal protection of the laws." The First National Bank of Carnegie is a person within the meaning of the due process and equal protection clause of that amendment: G. C. & Sante Fe R. R. Co. v. Ellis, 165 U. S. 150; Finance Corporation v. Paramount Auto Exchange, 262 U. S. 544. A state has no more power to deny equal protection of the law to a corporation than to individual citizens. The Car-

negie National Bank was a person doing business in Pennsylvania and may claim the benefit of the equal protection clause of the Constitution.

A state may classify its creditors but it must be within constitutional limitations, and the classification will not always be sustained even though all within the class are treated alike. The selection must not be an arbitrary one but one based on reasonable distinction. The Act of May 13, 1912, P. L. 354, provides that, in the liquidation of trust companies, distribution shall be made (in priority to all other claims) to depositors of such trust companies, certificate and check holders. The act treats all depositors alike whether they live in or out of Pennsylvania. Is there any sound, reasonable basis for this classification? The selected class are a part of the trust company's general creditors. Those who hold the bank's notes or who deposit bonds or other securities for sale, where the money has been received and intermingled in the general fund, are not included. Other illustrations might be given, but the most striking is that the creditor, receiver of a national bank, here excluded stands in the same position as the class of creditors the state act prefers. There is no reason inherent in the transaction on which the claims of these general creditors so preferred rests,—that, through fiduciary or other confidential relation, it distinguishes such creditors from others, or that would seem to give them a right or place superior to other creditors of equal grade. If we were to say that persons who lend money to banks stand in a class by themselves, while persons who lend money to other corporations or individuals, some of which perform services similar to banks, are excluded, we set up no reasonable standard to determine the classification. If a state may prefer depositors from the list of general creditors, why may it not prefer, as creditors, persons who lend money to any debtor? No one would contend for a moment that the state can be empowered to carve out of general creditors a group representing a particu-

lar nationality, religion or race, to give them preference, and there is just as much justification for such a classification as the one now being considered. People lend money to banks as they do to individuals or others, that it may yield them a revenue. The demand in each case is the same, property to back the loan and individual honesty. When the money is deposited under other circumstances, it is usually to enable one to more expeditiously carry on his business, or it assumes a trust relation. The classification here made is an arbitrary one, not based on any reasonable distinction.

It was held in Cotting v. Goddard, 183 U. S. 79, that a classification could not be made on the basis of the amount of business individuals did. In Connolly v. Union Sewer Pipe Co., 184 U. S. 450, a law forbade competition except as to agriculture and raisers of live stock, and the court held that it denied equal protection to the corporations that were not excepted. In Kentucky Co. v. Paramount Co., 262 U. S. 544, a state was prevented from imposing onerous requirements on foreign corporations seeking to recover their property by actions at law in the courts of the state. To the same effect is Gulf, Colorado & Sante Fe Ry. v. Ellis, supra. Attention is also called to what was said in Truax v. Corrigan, 257 U. S. 337, 338.

The majority opinion characterizes the ultimate consequence of the discrimination under the Act of 1913 as "fortuitous" or a "chance circumstance." It is, if anything, an admission of the act's possibilities, how, by insidious beginnings, the whole national bank structure may be wrecked. But the condition which results from the direct operation of these acts is the impairment of the capital of a national bank, solvent or insolvent, injuring not only its efficiency, but also its life.

Counsel for appellees urges that the Act of May 23, 1913, supra, having been adopted by the federal courts, must be considered as written into the laws of the United States. This contention is based on a federal statute

1926.]                    Dissenting Opinion.

(Act of June 1, 1878, c. 285, s. 1540, U. S. Comp. Stat. 1916, s. 1540) providing that the district courts of the United States may, by general rule, adopt state laws in relation to remedies by execution or otherwise. Such a rule was adopted by the district court and was in effect January 1, 1913. But does this dispose of the receiver's claim to share equally with the depositors? The act of Congress and the rule of court both relate to state laws *as to remedies.* It is true that the Pennsylvania Banking Act of 1923, P. L. 809, under which the receiver filed his claim, directs that distribution shall be made in accordance with the priorities fixed by law, but the question of priorities is not one of remedy, but of substantive law. Certainly Congress never intended to constitute each district court a subordinate legislature, and to delegate to those bodies power to adopt the substantive law of the states in which they were situated. Where a state law is inconsistent with an act of Congress, it cannot be adopted by rule of court: Bronson v. Kinzie, 1 Howard 311, 314; M'Cracken v. Hayward, 2 Howard 607, 615; United States v. Halstead, 10 Wheat. 51. The state law here conflicts, as we have seen, with a later federal act, and the latter supersedes it. Upon these considerations, the decision of the Superior Court in Jones' Est., 84 Pa. Superior Ct. 170, cited by appellees, would seem to be questionable, although other considerations may have turned the issue. Fink v. O'Neill, 106 U. S. 272, is clearly distinguishable. The state law there involved had a direct relation to executions.

For the reasons here given, I would reverse the judgment in this case.