## IN RE RIVERTON STATE BANK
## MADDEN v. WILDE, STATE EXAMINER

(No. 1860; October 1, 1935; 49 Pac. (2d) 637)

For the appellant, the case was submitted upon the brief of *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne.

For the respondent, the case was submitted on re-hearing upon the brief of *F. B. Sheldon, Jr.,* of Riverton.

BLUME, Justice.

In this case Madden, as the evidence shows, deposited in the Riverton State Bank a check for collection, $8000 of the proceeds to be sent to Wisconsin. The bank, after collection, and on August 9, 1932, sent to Wisconsin a cashier's check in payment. Prompt attempt to collect that check through the regular channels was made, but before it was paid, the Riverton bank became insolvent, and the appellant herein, the State Examiner, has now charge of the bank. Madden claimed that he should have a preferred claim on the

assets of the bank, and brought suit herein to have that established. The trial court held with him, though the money was not traced to any of the bank's funds. The case was appealed, and we affirmed the judgment. 47 Wyo. 469, 38 P. (2d) 603. Our holding was based mainly on the provisions of the Bankers' Collection Code, enacted into law in this state, which gives to claimants such as Madden a preferred claim against the assets of the bank and dispenses with the rule of tracing the money. Subdivision 3 of Section 13 of the Code (Sec. 10-713, Rev. St. 1931) which gives such preference reads as follows:

"Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

Appellant filed a petition for rehearing, based principally on the ground that the law just mentioned is unconstitutional. That point was not presented upon the former hearing, and on that account we should ordinarily have refused a rehearing. Brewer v. Folsom Brothers, 43 Wyo. 517, 7 P. (2d) 224; Bank v. Ennis, 44 Wyo. 497, 14 P. (2d) 201. Because of the public interest involved, however, we deemed it best

to make an exception in this case, and the petition for rehearing was granted. The case is now again before us, after full presentation by counsel for the respective parties of the points deemed by them to be pertinent herein.

1. Our attention has been called to the provisions of Section 10-214, Rev. St. 1931, to the effect that in case of insolvency of any savings bank or association, the savings depositors thereof shall be entitled to preference in payment over the shareholders and all other creditors of such bank or association. Counsel for the plaintiff concede, as we understand it, that the claims of the depositors in the savings department, if any, of the Riverton Bank, are prior and superior to that of the plaintiff herein as to the assets of that department. We are accordingly saved the trouble of investigating the point, and the judgment herein will be modified accordingly.

2. The Banker's Collection Code above mentioned was enacted as Chapter 74 of the Session Laws of 1931, subsequently embodied in the Revised Statutes of 1931—Sections 10-701 to 713. The title of the act is as follows: "An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money." It is claimed that this title is defective, and does not, in violation of Section 24, Article III of the state constitution, clearly express all the provisions embodied in the act; that it in no way indicates the provision for preference given by section 13 of the act (Sec. 10-713, supra), and that such provision is not germane to the subject in the title. It might be argued that inasmuch as the act is now embodied in the revised code of 1931, the question of the sufficiency of the title cannot now be questioned. 59 C. J. 891-892. The final act relating to the revision was embodied in chapter 73 of the. Session Laws of

1931. That provides by sections 1 and 2 thereof that the laws enacted at that session of the legislature should be embodied in the revised code. Chapters 73 and 74 were both passed on February 21, 1931, and were both approved on March 3, 1931. If chapter 74 had in fact been passed subsequent to the law governing the adoption of the revised statutes of 1931, it could, of course, not be said that it received the sanction of the legislature as an integral part of the revision. 59 C. J. 893. And the same probably must be said of a legislative act passed simultaneously with the act relating to the revised code. It was held in Builders' & Painters' Supply Co. v. Lucas & Co., 119 Ala. 202, 24 So. 416, that the embodiment of the legislative act in a revised code, adopted during the same session of the legislature, did not cure a defect in the title of the act. The court said that "it (the act with the defective title) was not then part of the Code, and was not re-enacted as a part of it. It was incorporated or introduced by the commissioner, in obedience to the legislative mandate, that all laws of enactment at the session of the adoption of the Code, should be introduced therein. Whatever of validity such laws may have is derived from their original enactment, and not from their introduction, or the manner of their introduction into the Code." See also Blumenthal & Bickart v. Trager & Co., 131 Ala. 640, 31 So. 622; State ex rel. v. Miller, 158 Ala. 59, 48 So. 496; City of Anniston v. Court of County Com'rs., 158 Ala. 59, 48 So. 605; Rayford v. Faulk, 154 Ala. 285, 45 So. 714; In re Gillette Daily Journal, 44 Wyo. 226, 11 P. (2d) 265.

We think, accordingly, that we have before us for determination the question of the sufficiency of the title of chapter 74, supra. Two cases are exactly in point, both involving the identical title of the identical act before us. Witt v. Bank, 168 S. C. 1, 164 S. E. 306; Federal Reserve Bank v. Citizens Bank & Trust Co.,

(Idaho) 23 P. (2d) 735. The cases, both decided with one of the justices dissenting, state diametrically opposite conclusions. The reasoning of the South Carolina court, the first to decide the point, is as follows:

"The 1930 act, allowing a preferred claim for an item upon an insolvent bank, and the declaring of the same to be a trust, has a very wide and general title. It is not limited to cases of collection, but embraces the whole subject of collection and payment. The preferred claim, in the event of insolvency of the bank, is a necessary incident to the collection and payment of checks and other instruments. It arises out of, and only out of, the presentment and payment of items, and not otherwise. It provides for one very common feature or incident to the mode of such payments, when such payment is made by giving a draft on another bank which is no good and fails to produce actual payment because of the intervening insolvency of the bank giving such draft. It clearly relates to the same and not a different subject. It is one of the commonest occurrences or incidents to the collection and payment of checks or other items. It is expressed in the general title which embraces the whole range of the collection and payment of items. There is no departure; the act contains nothing which is not intimately interwoven with 'the collection and payment by banks of checks' and other instruments. The law of this state is clear that it is not necessary for every detail, incident, and particular of a statute to be expressed in the title. A general title is sufficient to embrace all the incidents germane to the general subject mentioned in the title. 'When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the Constitution.' Lillard v. Melton, 103 S. C. 10, 87 S. E. 421, 423."

In the Idaho case, the court had this to say:

"Appellant relies upon Witt v. People's State Bank of South Carolina, 166 S. C. 1, 164 S. E. 306, 310,

83 A. L. R. 1068, as the main authority in support of their contention, that the title is sufficient, having been so declared in that case. That case, however, while it attempts to distinguish the previous holding of the same court with regard to the title of another act, in Nettles v. People's Bank, 160 S. C. 104, 158 S. E. 214, cannot be, to our minds, distinguished. Furthermore, in the Witt Case, supra, the court said: 'The preferred claim, in the event of insolvency of the bank, is a *necessary incident* to the collection and payment of checks and other instruments.' (Italics ours.) We do not believe that this statement is necessarily correct. In other words, it is not necessary to expedite and simplify that they be preferred claims. They must be classified, which they have been in this state under the 1925 statute prior to the 1931 act. It does not follow that a contemplation of the expeditious means or simplification for the payment of checks would necessarily require that any of such checks be declared a trust fund and given preference, not only upon the funds in the bank, but upon all the assets of the bank, or that they in effect be given a preferred lien on all the assets of the bank. * * * *. Analyzing the Witt Case and other holdings relative to the insufficiency of titles * * * leads to the conclusion that the title here is insufficient. Therefore the act, not becoming operative until the adoption of the Code, did not govern the transactions set forth in the complaint, section 14, c. 60, Sess. Laws 1931, now section 25-1314, I. C. A., and, since the complaint as drawn is based solely upon this statute, it is unnecessary to consider whether the substance is unconstitutional, since it does not apply, nor whether appellant is entitled to relief in the absence of the statute, since the complaint was not drawn on that theory."

In the case of Upham v. Bramwell, 105 Or. 797, 210 Pac. 706, it was held that a provision granting to savings depositors a preference in the distribution of the assets of an insolvent state bank is germane to the title for regulation of state banks. In the case of State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 Pac. 636, we considered the title to chapter 117, Sess. L. 1921,

and held that the provision in the title for "carrying into effect so far as the State of Wyoming is concerned the eighteenth amendment to the constitution of the United States" was sufficient to justify the inclusion in the act of the provision for the removal of prosecuting attorneys under certain conditions, upon the theory that this was but a means to accomplish the main purpose of the act. It would seem that if we follow the spirit of that decision, we are constrained to hold with the South Carolina court in the case above mentioned. Chapter 74, supra, was designed to facilitate the collection and payment of checks passing through banks. It is not illogical to say that to give claims on checks collected by a bank a preference in the absence of an agreement to the contrary is at least one of the means to further and accomplish the main purpose, or one of the main purposes of the act.

3. It is further contended that the legislature of this state had no power to create the preference given by the law in question; that it authorizes the taking of the property of the general creditors of the bank without due process of law. Counsel argue that to constitute a trust, there must be something upon which it can operate; that in this case the collection made by the bank was dissipated, and hence there is nothing in existence in the nature of a trust. That argument would, of course, have force if we were dealing with an equitable trust. But we are not dealing with that; we have here a trust created by statute, and a great number of liens and preferences have at various times been granted by legislatures to the detriment of general creditors, and they have generally been upheld. 12 C. J. 1113, 1125, 1171, 1249. So, too, statutory preferences given to some creditors of banks over others have been sustained in a number of cases. Witt v. State Bank, supra; State ex rel. v. Bank, 122 Nebr. 109, 239 N. W. 646; State ex rel. v. First State Bank,

122 Nebr. 502, 240 N. W. 747; 79 A. L. R. 576; note to 31 A. L. R. 790; 79 A. L. R. 582. In the case of Re Cameron, 287 Pa. 560, 135 Atl. 295, 58 A. L. R. 554, it was said that a law giving depositors of an insolvent bank a preference right over creditors is not "constitutionally forbidden." In Oregon the legislature passed a law that savings depositors should be preferred creditors in the distribution of the savings assets of an insolvent state bank. In Upham v. Bramwell, supra, it was contended that the statute authorized the taking of property of commercial depositors without due process, in violation of the fifth and fourteenth amendments of the constitution of the United States. The court, brushing the argument aside, said that "a legislative enactment having a substantial basis for the classification made therein, which gives a preference to one class of creditors over another in the distribution of the assets of an insolvent debtor is not opposed to any provision of the Federal constitution." In the case of Witt v. State Bank, supra, the court, in holding that the legislature had the right to create the preference given by the Bankers' Collection Code, stated among other things the following:

"It would seem clear that the Legislature has the right to provide the order and priority of claims against an insolvent bank based upon a reasonable classification. But, as already shown, we think there is no classification here, because the owners of items, without discrimination or classification of such owners, are given the same right of priority upon insolvency of the bank. If there is a classification, it is between the owners of items as distinguished from other creditors. But clearly there are ample grounds for reasonable distinction between the owners of such items and general creditors. The holders of such items passing through a bank on the eve of insolvency are subject to a peculiar risk and hazard arising from the nature of banking institutions and the necessary commercial practice of handling checks and treating the

items as equivalent to so much cash, to accomplish which it is necessary to place a certain trust and confidence in the payor bank. It would defeat the banking system to require payment in currency of every item. Such real difference in the situation justified the Legislature in making such provisions. They are not based on any classification or difference in the owners of items, but apply to all creditors who come within the facts and conditions defined; namely, present items for payment when the bank becomes insolvent before the items are actually paid in cash or by solvent credit."

And further on, the court discussing the question as to whether the contract right of depositors is violated, stated as follows:

"If he (the depositor) leaves it (his money) on deposit after the act is passed, the act becomes a part of the law and contract governing his deposit to which he has necessarily assented by leaving his money on deposit. One who has so simple a remedy in his own hands of withdrawing his deposit cannot claim that any contractual or vested right has been violated by such a statute when for a long period of time he left his money on deposit subject to the terms of the statute. If he leaves his money on deposit, he necessarily runs the risk of the bank becoming insolvent and of all the incidents attached by law to such insolvency."

We think that the reasoning of the foregoing case is sound, and we cannot perceive why we should not follow it.

4. The Supreme Court of the United States has recently held that the Banking Collection Code is not applicable to national banks. Old Company's Lehigh Inc. v. Meeker, 55 Sup. Ct. 392, 79 L. Ed. 876, 71 F. (2d) 280; Jennings, Receiver, v. United States Fid. & Guaranty Co., 55 Sup. Ct. 394, 79 L. Ed. 869; see also Spradlin v. Manufacturing Co., 73 Fed. (2d) 776. The cases but followed others, involving a like principle, and decided a number of years ago. The decisions are binding upon us and we accordingly find that

the act here in question cannot be applied to national banks in this state. The bank involved in the case at bar, however, is a state bank, and these decisions, accordingly, have no bearing herein, unless it be indirectly. National banks represent, probably, the largest proportion of deposits in this state. An interesting question, therefore, is as to whether or not the rule recently mentioned in the case of McFarland v. Cheyenne (Wyo.) 42 P. (2d) 413, or one analogous thereto, should be applied, namely, that where a law is invalid as to an important part, it should be held to be invalid as a whole. That point, however, has not been suggested by counsel, and we, accordingly, express no opinion thereon. We might, however, say, in that connection, that the Bankers' Collection Code was apparently passed notwithstanding previous decisions of the United States Supreme Court holding as above stated, and that fact should be borne in mind in determining the intention of the legislature. It may be that there are other points bearing upon the constitutionality of the law in question, which have not been presented, and which, of course, are not foreclosed by this opinion.

5. A great portion of the brief of counsel for appellant is devoted to a discussion of the rules which apply or should apply in the creation of an equitable trust or preference right in case of insolvency of a bank. The Jennings case, supra, upon which stress is laid in the brief, also is largely devoted to the same subject. And while we, too, in the former opinion discussed these rules to some extent, it was not necessary to do so, and it is not necessary to do so now. We are dealing in this case with a trust which was created by the legislature. We do not, for instance, see why we should inquire whether the fiduciary relation continued after the collection was made, as was done in Jennings v. United States Fidelity & Guaranty Company, supra. That case holds, as we understand it, that, under prin-

ciples of equity, the fiduciary relation between a bank and a person for whom it makes a collection, ceases when the collection is made; that even if the Bankers' Collection Code changes the rule, no trust will be held to exist if the subject thereof does not exist; that the provisions such as contained in Section 10-713, supra, bring a trust into existence for the first time when the bank becomes insolvent, and that such trust is "co-extensive in its subject with all the assets of the bank," but that these provisions cannot be applied to national banks because inconsistent with the acts of Congress. Since the statute could not be applied, it was necessary, of course, to go further and inquiry whether a trust existed notwithstanding that fact. But, as already stated, no obstacle to the application of the statute applies herein, and for the purposes of this case at least, it does not matter whether we hold that it contemplates the continuance of a trust relation from the time that a collection is entrusted to a bank until it is finally paid to the *cestui que trust,* or whether we hold that the trust relation existing at the time of insolvency is independent of that existing previously.

Subdivision 3 of Section 10-713, above quoted, provides that when a bank has made a collection, having received it in *any* form, and has not paid it in money, a trust shall be held to exist unless an unconditional credit is given on the books of the collecting bank or on the books of any other bank, "which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor." There can be no doubt that the Riverton bank received the proceeds of Madden's check in *some* form. It acknowledged that fact when it sent its cashier's check. It is claimed, however, that when the cashier's check was issued, an unconditional credit was thereby given and accepted on the books of the bank, within the meaning of the statute, so as to constitute the Riverton bank

merely a debtor. We held otherwise in the original opinion. The case of Ex parte Sanders, 168 S. C. 323, 167 S. E. 154, was cited to us. That case arose under the Banker's Collection Code. The claimant presented to the Bamberg Banking Co. a check, and received and accepted in payment cash of $100, and a draft drawn on another bank for the balance, the Bamberg bank having sufficient money in such other bank to pay the draft for a period of 15 days during which the draft was not presented for payment. Fifteen days after the draft was issued, the Bamberg bank failed, and the bank against which the draft was issued then ceased to have enough money to pay the draft. The case was decided by a divided court. The majority held that it did not come within the provisions of subdivision 3 above mentioned, but within subdivision 2 of the same section, and that the claimant received and accepted an unconditional credit on the books of the bank on which the draft was drawn; that he should have presented the draft for payment, and if that had been done in proper time, it would have been paid.

The case cannot be said to be controlling here; nor even in point. In the first place, the Riverton bank on August 8, 1932, when the cashier's check of about $8000 was issued, had on hand cash in its commercial account of $3015.68. It had in its savings account a further sum of $4302.01 in cash. Even if the latter amount can be considered, which is doubtful, the combined sums were not sufficient to pay the check. The amount of cash in the bank continued to diminish from that time on, and at no time thereafter did it have on hand a sufficient sum to pay the check. It perpetrated a fraud when it issued the check, and it is hard for this court to accept the contention that Madden should, under these circumstances, be held to have received and accepted an unconditional credit on the books of the bank. Moreover, Madden wanted the money in

Wisconsin. That was true from the very beginning. That would seem to be utterly inconsistent with the fact that he wanted to be the possessor of an unconditional credit on the books of the Riverton bank. He took the cashier's check, it is true. But he did not accept this so as to evidence such unconditional credit. On the contrary, he sent it immediately for collection, again negativing the acceptance of such unconditional credit. Courts generally hold that when a cashier's check is purchased, the relation of debtor and creditor is thereby created. And some courts hold that this is true also when remittance by such check is expressly requested. Note 73 A. L. R. 66. When, however, a trust relation exists, and a cashier's check is accepted only as a means to aid in obtaining the money, then, according to the holding of most of the courts, the bank does not cease to be a trustee, and the acceptance of such check for purposes of collection only does not create the relation of debtor and creditor. Note 73 A. L. R. 71, IIIb; Jefferson Standard Life Ins. Co. v. Wisdom, 58 F. (2d) 565; In the Matter of the International Milling Co. v. Broderick, 259 N. Y. 77; Central Trust Co. v. Bank, 109 W. Va. 119, 153 S. E. 145. Counsel for appellant do not believe these authorities to be in point. But whatever differences they exhibit, they deal directly with the question as to whether or not the acceptance of a cashier's check changes the previous relation of agency to that of debtor and creditor, the very question with which we are dealing here. The Federal case lucidly states [58 F. (2d) 565, 566]:

"In depositing it (the cashier's check) for collection, the insurance company merely treated it as a means of getting payment, and not as payment. When the check was dishonored, the rights of the insurance company at its option stood unaffected by the check. A check is not payment unless itself paid, unless specially accepted as payment. * * * * A bank holding funds as a collecting agent cannot make itself a debtor

and acquire title to the funds by unauthorizedly commingling them with its own and sending its principal a bad check; nor is this result produced through ratification or waiver by the principal's fruitlessly presenting the check for payment directly or through other banks. The check is sent with an implied representation that it is good. It is accepted as payment, if paid. By its dishonor the arrangement proposed in sending it wholly fails at the option of the holder."

It may be noted that in the New York case, it was apparently contended that the holder of the cashier's check was not entitled to any preference because he had received an unconditional credit on the books of the bank under the provisions of law identical with sub. 3, Sec. 10-713, supra, and while the court in some respects apparently did not attribute to that provision the force to which it is entitled (possibly because it was not necessary to do so), it held that in "receiving and presenting the cashier's check, petitioner did nothing more than co-operate with the bank in the attempted delivery of the proceeds of the collection."

We think, accordingly, that there is nothing in the record which can properly be construed as a request or acceptance of an unconditional credit on the books of the Riverton bank, and we cannot, therefore, see how we can deny the preference granted by the statute. Supporting our conclusion to a more or less extent are McQueen v. Randall, 353 Ill. 231; Prudden & Co. v. First Nat. Bank, 115 N. J. Eq. 365, 170 Atl. 860; Denkichi Tsujii v. Moody, 173 Wash. 376, 23 P. (2d) 403; State v. Kingston, 215 Wis. 80, 254 N. W. 126; Witt v. Bank, supra.

The judgment of the trial court, modified as above mentioned, must, accordingly, be affirmed.

*Modified and Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.