## Commonwealth v. Crayton.

*Karl E. Richards*, assistant district attorney, and *Charles Gilmer*, for Commonwealth.

*Metzger & Wickersham*, for defendant.

WICKERSHAM, J., July 23, 1930.—The defendant was indicted and tried for failure to pay the liquid fuels tax, in violation of the Act of April 14, 1927, P. L. 287, 289. At the trial the defendant offered no testimony. The jury convicted him, whereupon he presented the pending motion in arrest of judgment and for a new trial.

In his first reason for a new trial the defendant alleged the verdict was against the evidence. We were satisfied at the trial that the evidence was sufficient, if believed by the jury, to support a conviction. We are still of that opinion, and, therefore, the first reason for a new trial is overruled.

The second reason alleged the verdict was against the law; and the third that the statute under which this prosecution was brought is unconstitutional and void. These two reasons will be considered together. The question to be determined, therefore, is the constitutionality of the above-mentioned act.

Section one of the act defines the term "liquid fuel" and the words "dealer" and "consumer." Section two of the act provides that "all dealers and consumers of liquid fuels in this Commonwealth . . . shall, within thirty days" after said act goes into effect, and all dealers and consumers of liquid fuels engaging in the transaction of such business thereafter,— "shall, prior to the commencement of such business, file a duly acknowledged certificate with the Auditor General, on a form prescribed, . . . which shall set forth the name under which such dealer or consumer transacts or intends to transact such

business, and the place of business of such dealer or consumer; . . . No dealer or consumer, as herein defined, shall, after the date this act becomes effective, sell or use any liquid fuels, until such certificate is filed as required by this act; nor shall any dealer or consumer, engaging in such business subsequent to the passage of this act, commence such business without first filing such certificate with the Auditor General." After such certificate is filed "the Auditor General shall issue to each such dealer or consumer a 'Liquid Fuel Permit,' " which shall be "conspicuously exposed, by such dealer or consumer, at each place of business . . . and shall authorize such dealer or consumer to engage in the sale and/or use of liquid fuels, upon conditions that the tax imposed by this act is assessed, collected, reported, and paid into the State Treasury as provided by this act."

It will be observed at the outset that no person is compelled to become a dealer in or consumer of liquid fuels. That is a matter entirely at his own option; but if he desires to enter into the transaction of such business he must obtain a permit so to do and said permit is issued on the condition that the tax imposed by this act is assessed, collected and reported and paid into the State Treasury by said dealer or consumer

Section three of the act provides:

"A State tax of two cents a gallon, or fraction thereof, is hereby imposed upon all liquid fuels sold by dealers in this Commonwealth, except for the purpose of resale, and upon all liquid fuels used within this Commonwealth by consumers when no such tax has been collected thereon by a dealer. In addition to the aforesaid tax of two cents, for the period commencing the first day of July, one thousand nine hundred and twenty-seven and ending the thirtieth day of June, one thousand nine hundred and twenty-nine, an emergency State tax of one cent a gallon, or fraction thereof, is hereby imposed on all liquid fuels sold by dealers in this Commonwealth, except for the purpose of resale, and upon all liquid fuels used within this Commonwealth by consumers, when no such tax has been collected thereon by a dealer. Duplicate taxation is not intended, but the tax hereby imposed shall apply to all liquid fuels sold and/or used within this Commonwealth, excepting such transactions in interstate or foreign commerce as are not within the taxing power of the State. The taxes on sales hereby provided for shall be collected by the dealers selling liquid fuels, to purchasers, who purchase for purposes other than resale; and the taxes on use shall be paid by the consumers, who use liquid fuels upon which the tax has not been paid; and said taxes shall be paid by such dealers and consumers into the State Treasury in the manner and within the times herein specified."

Section four of the act provides that it shall be the duty of every dealer and consumer to transmit to the Auditor General, upon a form prescribed, a statement or return, under oath or affirmation, of the liquid fuels purchased, sold and/or used by such dealer or consumer during the preceding three months, ending the last days of March, June, September and December of each year, and shall show the number of gallons of such liquid fuels purchased, sold and/or used within the state during the said periods from the respective places of business of such dealer or consumer, with such further information as the Auditor General shall prescribe.

Section five provides that every dealer and consumer, at the time of making the reports required by section four of this act, shall pay to the State Treasurer the amount of tax due for the period covered by such reports.

Section eight of the act provides, *inter alia,* "any dealer or consumer who shall fail, neglect, or refuse, to make the statements or returns, or pay the tax

as herein prescribed . . . shall be guilty of a misdemeanor." Section nine provides that the tax imposed by this act shall be paid by the consumer "purchasing liquid fuels from dealers for his own use and not for the purpose of resale, or by the person, firm, copartnership, association, or corporation, using liquid fuels, upon which no tax has been collected by a dealer, . . . ."

It is contended by counsel for the defendant that when the tax was collected by the defendant in the ordinary course of business he stood in the relation of a debtor to the Commonwealth in the same way in which any other collector of taxes would stand in relation to the municipality or state for which the tax was collected; that section seven of article three of the Constitution of Pennsylvania, which provides, *inter alia:* "The General Assembly shall not pass any local or special law . . . providing or changing methods for the collection of debts," applies to the instant case; that there is no good reason why the person who engages in the sale of gasoline and thereby receives tax money into his possession should be subjected to the penalty imposed by the Gasoline Tax Act when any other collector of taxes due the Commonwealth is not subject to such penalties. In support of this contention he refers to Smith's Appeal, 241 Pa. 336, which holds that the Act of April 22, 1903, P. L. 255, amending the Mechanics' Lien Law of 1901, and providing a method of recovering for labor or materials furnished for a structure or improvement for purely public purposes, in lieu of the lien given by the Mechanics' Lien Law, is unconstitutional, because it creates a new method for the collection of a debt due for labor and materials, in violation of article three, section seven, of the Constitution. Dyer *v.* Wallace, 264 Pa. 169, is cited by counsel for the defendant, which holds that the Mechanics' Lien Law of 1901 does not extend its benefits to an architect merely for preparing plans; also Cameron's Account, 287 Pa. 560, which holds that the provisions of the Act of May 23, 1913, P. L. 354, giving to depositors of trust companies priority on distribution of its assets in the course of liquidation by legal process or otherwise, is not unconstitutional, in violation of article three, section seven, of the Constitution. Laplacca et ux. *v.* Philadelphia Rapid Transit Co., 265 Pa. 304, is also cited by counsel for the defendant, which held that the Attorney's Lien Act of May 6, 1915, P. L. 261, giving attorneys of record in legal proceedings the right of lien to any award, compromise or verdict in favor of the client, was unconstitutional, in violation of article three, section seven, of the Constitution. A mere reading of the above-quoted authorities clearly demonstrates that they have no application and cannot control the instant case.

Counsel for the defendant says in his brief: "There does not seem to be any good reason why the person who engages in the sale of gasoline and thereby receives tax money into his possession should be subjected to the penalties imposed by the gasoline act when any other collector of taxes due the Commonwealth is not subject to such penalties." Counsel has entirely overlooked the Act of June 3, 1885, P. L. 72, which provides:

"That if any person charged with the collection, safe keeping, or transfer of any State, county, township, school, city, borough, or municipal taxes, under any law or laws of this Commonwealth, shall convert or appropriate the moneys so collected, or any part thereof, to his own use in any way whatever, or shall use by way of investment in any kind of property or merchandise any portion of the money so collected by him from such tax or taxes, and shall prove a defaulter or fail to pay over the same or any part thereof at the time or times, place or places, required by law and to the person or persons legally authorized to demand and receive the same, every such act shall be deemed and adjudged to be an embezzlement of so much of said money as shall be thus

taken . . . which is hereby declared a misdemeanor; and every such tax collector . . . being thereof convicted, shall be sentenced to an imprisonment not exceeding five years, or to pay a fine not exceeding five thousand dollars, or both at the discretion of the court."

Convictions under this act were sustained in Com. v. Clevenstine, 66 Pa. Superior Ct. 125; Com. v. Sitler, 67 Pa. Superior Ct. 1, and Com. v. McCullough, 19 Pa. Superior Ct. 412. The Act of 1885 and the decisions of the Superior Court sustaining the same effectually dispose of this contention on the part of counsel for the defendant. We do not now decide whether this indictment could have been sustained under the Act of 1885; it is not necessary for us so to determine in consideration of the provisions of the Act of 1927 from which we have quoted, making the failure of the defendant to pay the tax so collected by him from consumers a misdemeanor. There is no weight to this contention upon its merits. The defendant collected the tax from the consumers; that is not in controversy. He did not pay it over to the Commonwealth of Pennsylvania; that is not denied. Why, then, should he complain if he is indicted for his failure to pay over to the Commonwealth money which did not belong to him and which under his permit he was bound to collect from the consumers and pay to the Commonwealth? To merely state this question is to answer it.

Counsel for the defendant further contends that the above-quoted Act of 1927 is unconstitutional, in violation of section one of article nine of the Constitution, which provides: "All taxes shall be uniform upon the same class of subjects within the territorial limit of the authority levying the tax, and shall be levied and collected under general laws." We are at a loss to understand this contention, and counsel for the defendant frankly admits: "We do not contend that the Commonwealth does not have the right to levy the tax on the consumer, but we do contend that when a law imposes penalties upon a collector of gasoline tax, which penalties are not imposed upon the collectors of other taxes, the portion of the statute in question inflicting such penalties is illegal and void." This argument must fail because there is an act of assembly imposing penalties upon other tax collectors (Act of 1885).

Counsel for the defendant relies on Van Loon v. Engle et al., 171 Pa. 157. This decision interprets article three, section fifty-two, of the Constitution, and not the article and section referred to by counsel for the defendant. It holds that the Act of June 2, 1881, P. L. 45, entitled "An act to make taxes assessed upon real estate a first lien, and to provide for the collection of such taxes and a remedy for false returns," and excepting cities of the first, second and fourth classes, is unconstitutional, inasmuch as it violates article three, section seven, of the Constitution, which provides that no local or special law shall be passed "authorizing the creation, extension or impairing of liens; regulating the affairs of counties, cities, townships, wards, boroughs or school districts; creating offices or prescribing the powers and duties of officers in counties, cities, boroughs, townships, election or school districts." We find nothing in this decision which supports the contention of conusel for the defendant.

The Liquid Fuels Tax Act of 1927 is a general act; it imposes a state tax of three cents a gallon upon all liquid fuel sold by dealers in this Commonwealth, except for purposes of resale, and upon all liquid fuels used in this Commonwealth by consumers when no such tax has been collected thereon by the dealer. The imposition of a duty on the part of a dealer selling gasoline to collect the tax from the consumer and pay it to the Commonwealth is not unusual. The Act of June 8, 1891, P. L. 229, 240, requiring any bank incorporated

by this state or the United States to collect from its shareholders and pay into the State Treasury a tax of eight mills on the dollar on the par value of all its shares, and also providing that any bank which fails to do so shall be subject to a tax of four mills upon the actual value of all the shares of its capital stock, was held not to be repugnant to article nine, section one, of the Constitution of Pennsylvania, which ordains that "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws;" Com. v. Merchants and Manufacturers National Bank of Pittsburgh, 168 Pa. 309. While it is true that the Act of June 13, 1907, P. L. 640, changed the method of determining the value of shares of stock so issued by trust companies, it was not intended by the legislature to release such corporations from liability to pay taxes which had accrued at the time of the passage of that act under the Act of June 8, 1891, P. L. 229, although the latter act was repealed by the former: Com. v. Mortgage Trust Co., 227 Pa. 163.

The Act of July 15, 1897, P. L. 292, 294, which in effect repealed the Act of 1891, includes in section one thereof the provision that any bank may elect to collect annually from the stockholders thereof a tax of ten mills on the dollar upon the par value of all shares of said bank that have been subscribed for or issued and pay the same into the State Treasury on or before the first day of March in each year; and the shares of such bank or savings institution, and so much of the capital and profits of such bank or savings institution as shall not be invested in real estate, shall be exempted from local taxation under the laws of this Commonwealth.

It is a well-established principle of law that one who seeks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so: Gottschall v. Campbell, 234 Pa. 347, 348; State ex rel. Richards v. Moorer et al., 152 S. C. 455, 150 S. E. 269. In the last-cited case it was decided that any doubt will be resolved in favor of the validity of the act. We think counsel for the defendant has not met the burden of proving beyond a reasonable doubt that the Liquid Fuels Tax Act of 1927 is unconstitutional and void, and, therefore, the second and third reasons for a new trial must be overruled.

The fourth and fifth reasons alleged for a new trial are without merit. In the fourth reason it is alleged that we erred in permitting a witness for the Commonwealth to refresh his memory with records sent to him by his company from New York City, which records were not made up under his supervision.

It appeared from the evidence that the defendant made application for and was granted a permit to sell liquid fuels; that he engaged in the business and discontinued it January 1, 1929; that he was engaged in the business from February, 1928, to January 1, 1929. The permit to sell liquid fuels was offered in evidence as Commonwealth's Exhibit No. 1. That defendant actually sold gasoline during the period mentioned appears by the testimony.

Mary W. Parnell was employed as bookkeeper, checking the reports of gasoline dealers in the Auditor General's Department. This witness testified:

"The gasoline dealers were supposed to file reports within thirty days after the previous quarter, and if the reports were not filed we were instructed, according to the ruling of the assembly, to estimate all the sales that were reported by the wholesale company and charge up the dealer with that amount."

This witness further testified:

"There was no report for the quarter of July, August and September of 1928, there was no report filed and according to the act, . . . .

"And this settlement was made from the slips sent in by the wholesale company, and that would not have been made up had the report been filed."

The witness Charles Oscar Miller testified that during the last six months of 1929 he was employed by the Sinclair Refining Company as warehouseman; his duties were to check all the gasoline going out—loads of gasoline; that he made deliveries to the defendant in person once or twice; that he had a record representing "all deliveries made to Crayton's place of business, Sixth and Reily Streets, during the last six months of 1928, each individual delivery," his own personal delivery amounting to 256 gallons. He further testified that they "keep a record in the Harrisburg office and the record is forwarded to the New York office and from there it is put to the state from our New York office." The defendant offered to refresh his memory from a copy of all sales taken out of the books at the New York office. Counsel for defendant objected to the admission of this testimony, to which objection we said:

"We do not know that it is very necessary to have this information anyhow. The act of assembly says that the Auditor General shall settle an account against such dealer or consumer based upon the evidence contained in the statement or return, or upon any information within his possession or that shall come into his possession. That is a very general term, that is as broad as a barn door and as deep as a well, that legislation."

The witness was then allowed to refresh his memory from the statement to which objection was made and upon which we had ruled, that the total gasoline for the last six months of 1928 was 8964 gallons.

It further appeared from the record and from the evidence that there were two indictments against the defendant for failing to make the reports required by the said Act of 1927. To these indictments defendant put in a plea of guilty. It is impossible, therefore, for the Auditor General to make a settlement of the number of gallons bought and sold by the defendant from the reports which it was the duty of the defendant to make. Section seven of the Liquid Fuels Tax Act of 1927 provides:

"If the Auditor General is not satisfied with the statement or return made by any dealer or consumer under the provisions of this act, he is hereby authorized and empowered to settle an account against such dealer or consumer, based upon the facts contained in the statement or return, or upon any information within his possession, or that shall come into his possession, with the right to the dealer or consumer, dissatisfied with the settlement so made against him, to appeal therefrom in the manner now provided by law for appeals from tax settlements. If any such dealer or consumer shall neglect or refuse to make the statement or return, as required by this act, the Auditor General may estimate an assessment against such dealer or consumer and settle an account for taxes, together with a penalty of ten per centum thereon, as hereinbefore provided, from which settlement there shall be no right of appeal."

We think the defendant has now no cause to complain because, having failed to make the statement required by the act, the Auditor General estimated and made an assessment against him from such information as he had. That information was the return of the wholesaler from whom the defendant purchased gasoline. The last witness from whose testimony we have quoted testified that he himself had delivered gasoline to the defendant; another witness testified she saw him sell gasoline. The amount of gasoline sold by him and the total amount of the tax assessed against him are not, in our opinion,

important. The important question was, did he sell gasoline under his permit so to do, and did he fail to pay the taxes collected to the state, regardless of the amount of tax he actually collected. We think if we were in error in allowing one of the witnesses to refresh his memory from the notes before him it was harmless error, and the fourth reason for a new trial is overruled.

The fifth reason complains that we refused the offer of the defendant to prove that there was a leak in the pipe leading away from the tank in question and to give testimony generally regarding the leakage therefrom. We do not regard this as pertinent. This was not a civil suit to collect from the defendant the amount of the tax the Commonwealth claimed to be due on the .amount of gasoline sold, but was a prosecution to punish the defendant for failure to pay to the Commonwealth the tax which he had collected from consumers of gasoline. It was testified that estimates of the tax against the defendant were sent to him on November 23, 1928, based on the report that was sent to the Commonwealth from the wholesale company which was then the Sinclair Refining Company. The witness (Miss Parnell) testified:

"This is a settlement made up so as we can determine the amount of tax due by a certain dealer because he has failed to file a report."

The Commonwealth also offered in evidence Exhibit No. 3, to which the witness testified:

"It is a settlement made up because the dealer failed to file a report, and it is based on the gallonage reported as purchased by the Sinclair Refining Company for the months of October, November and December, the bill being $72."

This witness also testified that she made up this settlement, and that the defendant never made payment of the tax assessed by the Auditor General. The duplicate copy of that settlement was sent to the dealer the same day that it was made, under the seal of the department, and the dealer was the defendant. The last settlement was made March 1, 1929.

The witness Burns testified that he made several demands upon the defendant for the payment of these settlements, to which the defendant said "He owed them, but he just didn't have the money to pay them at that time."

The Commonwealth having closed its case, the defendant offered to prove by the witness Hummer that very promptly after Mr. Crayton left the place of business where he had previously sold gasoline the witness was employed to investigate and determine the condition of the tank and pump as well as the pipe leading from the tank to the pump; that upon going on the premises he discovered that the ground had sunk in the vicinity of the tank, and upon investigating, by digging down into the earth, he found that there was a leak in the pipe. Defendant offered to prove through another witness that there was a strong smell of gasoline coming away from the pump during the entire period during which this defendant operated the tank, and that by actual tests 22 gallons leaked away from the first delivery of 100 gallons, in February, and that 178 gallons were missing in the last delivery in November, out of 256 gallons. The Commonwealth objected to this testimony being offered, to which objection we ruled as follows:

"We think the several matters suggested in the offer of testimony would apply if this were a civil action to recover the tax, but inasmuch as this is a criminal prosecution, brought not for the purpose of recovering tax, but for the purpose of imposing the penalty prescribed by the act of assembly for violations of its provisions, which, it is conceded, have not been complied with, and the defendant having had a remedy in case the tax was overpaid, or in case the assessment was more than was due, of which he did not avail himself, the objection must be sustained."

It did not appear from the testimony of the witness Burns that the defendant set up the defense of leakage when he requested him to pay the amount of the assessment due, but that the witness said he was short of money and could not pay it. Had the defendant complied with the provisions of section four of the act by transmitting to the Auditor General upon the form prescribed by him, under oath, the liquid fuels purchased and sold, he could at that time have stated that there was a leakage in his tank. This he did not do, and, as we have pointed out, he pleaded guilty to the indictment for failure so to do. There is no evidence that he made any effort to discover whether there was a leakage and the amount of the leakage. No effort was made to discover this condition of affairs until a new dealer took possession of the fill-, ing station after the first of January, 1929. Under any state of affairs it seemed to us and we still think the testimony was impertinent and irrelevant. The defendant could have employed the witness Hummer to make the investigation for him which was afterwards made by a subsequent dealer selling gasoline at the same premises; he failed to do so. He proceeded to sell gasoline regardless of the leakage; he collected the tax which belonged to the state and not to him; he failed to make report of the gasoline purchased and sold; he failed to pay the tax which he had collected, and, therefore, we were of the opinion at the trial, and still think, under the evidence submitted in this case, that the defendant should not be permitted at this late date to take advantage of the discovery of the leakage which his successor found when he took possession of the filling station.

We are satisfied that the defendant was properly convicted and that the conviction was sustained by the evidence. The fifth reason for a new trial is also overruled. The defendant's motion in arrest of judgment and for a new trial is, therefore, for the reasons herein stated, overruled. The district attorney is directed to call the defendant for sentence.

From Homer L. Kreider, Harrisburg, Pa.