## IN RE RIVERTON STATE BANK
## MADDEN v. WILDE, STATE EXAMINER

(No. 1860; December 11, 1934; 38 Pac. (2d) 603)

470

For the appellant there was a brief by *Ray E. Lee,* Attorney General; *O. O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne.

For the respondent, there was a brief by *F. A. Michels,* of Lander, and *F. B. Sheldon,* of Riverton. Both sides submitted cause without oral argument.

BLUME, Justice.

In this case the court rendered judgment declaring the claim of John Madden, hereinafter referred to as the claimant, to be a preferred claim against all of the assets of the Riverton State Bank, now in the process of liquidation. From this judgment the State Examiner has appealed. He allowed the claim as a general one, and contends that it should not have been allowed as a preferred claim.

The evidence shows: On July 25, 1932, claimant had in his possession a check, apparently on a Wisconsin bank, for the sum of $9668.10. On that day he, in company with Mrs. Burke, went to the Riverton bank and interviewed Mr. McGeown, the cashier of the

bank. The claimant wanted to use part of the money, and after the cashier had, by telegram, found out that the check was good, it was agreed that the claimant might use of the sum of $1668.10 immediately and check against it. The Wisconsin check was to be sent through the regular channels and collected and the cashier agreed to send the balance of the sum, namely, $8000, to claimant's sister in law in Wisconsin. The check was accordingly deposited. The deposit slip was written out by the cashier. It was for the sum of $9668.10, and contains the statement: "In receiving items for deposit or collection, the bank acts only as depositor's collecting agent." On the books of the bank, the claimant was given credit for the total amount of deposit, namely $9668.10. At the same time the cashier gave to claimant a blank check book. The latter drew checks against the deposit, six in all, in the total sum of $1660.93, leaving of the above sum of $1668.10 only the sum of $7.17. All the checks were issued and paid on July 25, 1932. On August 6 thereafter claimant sent a telegram from Milton Junction, Wisconsin, to the Riverton State Bank reading: "Please send balance my account care of Farmers Bank Milton Junction Wisconsin." On August 9, 1932, the Riverton Bank issued its cashier's check for $8007.15. This check was deposited in the Farmer's Bank a few days thereafter, sent through the mails for collection, but was not paid because the Riverton bank closed its doors on August 20,1932.

1. The Attorney General, on behalf of the State Bank Examiner, contends that there is no substantial evidence to support the finding that the claimant should have a preferred claim, for the reason that the evidence clearly indicates that when claimant deposited his Wisconsin check, the relation of creditor and debtor arose between him and the bank. What the relation herein was, both before as well as after the Wisconsin

check was collected, depends upon the intention of the parties. 3 R. C. L. 633; Hudson v. State, (Del.) 156 Atl. 881, 80 A. L. R. 219; S. E. Hall Ind. v. Trust & Savings Bank, 177 La. 659, 148 So. 909; Brennen v. Holden, 4 Fed. Supp. 285, 288. The Attorney General has overlooked the deposit slip which states the relation to be that of principal and agent. And while such statement is not necessarily conclusive, it is material evidence of such intention. Brennen v. Holden, supra; King v. Bowling Green Trust Co., 145 App. Div. 398, 129 N. Y. S. 977. That intention must, of course, be held to be modified herein to the extent of $1668.10. Claimant and Mrs. Burke both testified that the bank was to act only as collecting agent in so far as the sum of $8000 was concerned, and this amount, when collected, was to be sent to Wisconsin. The stubs of the check book given claimant show that he was to check against only the sum of $1668.10. The stub of the first check was filled out by the cashier, according to the testimony of Mrs. Burke, and by Mrs. Burke, according to the testimony of the claimant himself. This stub indicates that it was changed, and that claimant, instead of having a checking account of only $1668.10, had a checking account for the total amount of the Wisconsin check, namely the sum of $9668.10, thus indicating that the relation of debtor and creditor arose as to the whole amount. But even if we accept as true, as the attorney general contends we should do, that Mrs. Burke, instead of the cashier, filled out the first stub, this would not change the situation, for the evidence is uncontradicted that the cashier filled out the stub of the second check, and that shows no changes, but was filled out on the basis of the contention that the claimant had a checking account only as he claimed, namely, for the sum of $1668.10. The foregoing evidence was sufficient, we think, in warranting the court in holding that the relation of the bank, both before

as well as after the Wisconsin check was collected, was that of agency. We do not think that the telegram sent by claimant, and hereinbefore set out, negatives that relation. It mentions "my account." But that does not, we think, necessarily postulate the existence of the relation of debtor or creditor, particularly in view of the positive and uncontradicted testimony tending to show the contrary.

The Attorney General, to sustain the contention that the relation of debtor and creditor existed in the case at bar, has cited us to the case of *Ex parte* Sanders, 168 S. C. 323, 167 S. E. 154. In that case a depositor of a bank drew a check against his deposit, and in exchange requested cash in the sum of $100 and a draft on a definite bank. It was held that the relation of creditor and debtor existed; further than in view of the fact that the assets of the bank were not augmented, he could have no preferred claim upon the insolvency of the bank. Two of the justices dissented. The case is distinguishable from the case at bar: (1) There can be no question that the assets of the Riverton bank were augmented when it received and cashed the Wisconsin check delivered to it by the plaintiff; (2) the claimant in this case was not a depositor of the bank until the check in question was deposited, and (3) he did not request a draft or check on any particular bank in payment of the collection which was to be made. The fact that the claimant became a creditor as to part of the deposit cannot, logically, be made conclusive of the fact that he became such as to the proceeds of the whole check deposited for collection. It doubtless is a circumstance in determining the relation as to the whole deposit, but that is all. It cannot be said to be controlling in the face of evidence which establishes the relation of principal and agent as to part of the deposit.

Inasmuch, then, as the Riverton bank must be held to have acted in a fiduciary capacity, namely, as agent for the claimant, it follows that under the holding of this court in State v. Foster, 5 Wyo. 199, 38 Pac. 926; Foster v. Rincker, 4 Wyo. 484, 35 Pac. 470; Lusk Development Co. v. Ginther, 32 Wyo. 294, 232 Pac. 518, and Vermont Loan & Trust Co. v. First National Bank, 37 Wyo. 216, 260 Pac. 534, the claimant herein must be held to have a preferred claim, at least as against the fund of money on hand at the time of the insolvency of the bank and against any other property into which the claimant's money can be traced. In the Ginther case this court held that to send a worthless draft instead of the money could not be considered as payment and did not prevent the application of the rule. See also 36 Yale Law Jr. 684, note 8. In the case at bar, the Riverton bank sent a cashier's check, instead of a draft. A check of that character ordinarily, of course, evidences the relation of creditor and debtor. But it is clear that in this case it was not accepted by claimant as creditor, but that it was used only as a means to obtain the money to which he was entitled. Under such circumstances, such check cannot be regarded as different from a draft. Jefferson Standard Life Ins. Co. v. Wisdom, 58 Fed. (2d) 565; In the Matter of International Milling Company v. Broderick, 259 N. Y. 77; see Note IIIb in 73 A. L. R. 71; Central Trust Co. v. Bank, 109 W. Va. 119, 153 S. E. 145. Even if, however, we are mistaken in this, the act of 1931 hereinafter cited provides for a preference in a case of that kind. The validity of that act is not attacked.

2. The main question herein is as to whether or not the claim herein must be traced into a specific fund, in accordance with our previous decisions. We have no occasion herein to doubt that the legislature has the power to classify deposits, provided the classification is reasonable, and to declare some of the deposits pre-

ferred over others, or to dispense with the rule of tracing. 12 C. J. 1103; Witt v. Bank, 166 S. C. 1, 164 S. E. 306; State ex rel. v. Bank, 122 Nebr. 109, 239 N. W. 646. Counsel for the claimant contend that Chapter 141, Sess. L. 1929, embodied in the Revised Statutes of 1931 as Sections 10-530 to 533, dispenses with that rule. The Attorney General contends that if it does, which he claims is not true, then it is unconstitutional. Section 3 of that act, which, it is claimed, applies to a case like that at bar, reads as follows:

"Checks, drafts or other negotiable instruments issued by any collecting bank or trust company in exchange for notes, bonds, interest coupons, warrants, or other evidences of indebtedness deposited with or forwarded to such bank or trust company for collection and payment by the makers thereof or other parties liable thereon, shall be entitled to preferred payment upon the insolvency of such bank or trust company."

The ground urged for the unconstitutionality is that the statute purports to create preferred claims even in those cases in which the checks, drafts, etc., deposited for collection may prove to be worthless. We do not think that the statute bears that construction. If the securities deposited for collection are worthless, no claim can arise in favor of a depositor even as a general creditor. Such claim can, generally speaking at least, be co-extensive only with the value of the securities deposited. When, accordingly, the statute refers to preferred claims, it necessarily, we think, postulates the existence of a valid claim. It may, however, be that the statute, if it intends to dispense with the rule of tracing, could be said to be unconstitutional on the ground that it gives a preferred claim only when the bank gives a check or draft or other negotiable instrument in exchange for the securities collected, or to be collected, when as a matter of practice a forwarding bank frequently gives only a receipt, and the stat-

ute does not give a preferred claim when that only, or a non-negotiable instrument, or no receipt, is given in exchange.

Our statute was apparently taken from Ch. 63, Sess. Laws Colorado 1925. An act of similar import, but differently framed, was passed in Utah in 1927. Ch. 49, Sess. Laws Utah 1927. See also Harvard Law Review 43, 311, note 25. These statutes, so far as we are aware, have not been passed on by the Supreme Courts of the respective states. South Carolina, too, adopted a law on the same subject. No. 202, Sess. Laws 1927. The act was declared unconstitutional because, among other things, it discriminates against "corporations, partnership and individuals sending their drafts directly to a bank for collecton." *Ex parte* Wachovia Bank & Trust Co., 160 S. C. 104, 158 S. E. 214. The act was amended in 1930, and the discriminatory provisions were eliminated. That act was upheld. Witt v. Bank, 168 S. C. 1, 164 S. E. 306.

It is not necessary, however, to determine the meaning of the act of 1929 or its constitutionality, if construed as dispensing with the rule of tracing, for the reason that a later act appears to cover the case at bar, and in which the legislature has gone, as to cases covered thereby, much beyond the rule heretofore recognized by this court. That is Ch. 74 of the Session Laws of 1931, now embodied in Sections 10-701 to 713, Rev. St. 1931. The act is the proposed statute drafted in 1928 by the American Bankers Association, known as the Bank Collecting Code. It had been adopted at the end of 1931 by 18 states. 39 Yale Law Journal 479; 43 Harvard Law Review 307; State v. Kingston, (Wis.) 254 N. W. 126. The act has not, for some reason, been mentioned in the brief of the attorney general, and its validity has not been attacked. Section 2 of that act (Sec. 10-702, Rev. St. 1931) provides that

the bank which receives an item for collection is an agent for collection, and the agency shall continue though "such bank allows any revocable credit for an item to be withdrawn." Section 13 of the act (Sec. 10-713, Rev. St. 1931) provides for preference of claims for collection items. Subdivision 2 deals with banks to which an item has been sent for collection. Unless such item has been paid for in money or an "unconditional credit" has been given, it is a lien on all of the assets of the bank, if the latter becomes insolvent, and the proceeds need not be traced into a particular fund. Subdivision 3 deals with forwarding banks, such as was the Riverton bank in the case at bar, and is as follows:

"Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

This subdivision has been considered in two cases. State v. Kingston, supra; Denkichi Tsujii v. Moody, 173 Wash. 376, 23 P. (2d) 403. In both cases it was held that if an item is deposited in a bank for collection and credit, and the depositing bank becomes insolvent after the collection has been made, but before

an unconditional credit has been given the depositor, the item is entitled to preference in accordance with the provisions of the statute. In the case at bar the item, to the extent of $8000, was deposited for collection, but not for credit, and hence the result reached in the cases cited should apply with full force. The collection item was not "paid or remitted for" in money, in accordance with the subdivision above quoted. An unconditional credit could not be given to the claimant on the books of the bank unless, as the statute provides, it was requested or accepted by him so as to constitute the bank his debtor. S. E. Hall Inc. v. Trust & Savings Bank, 177 La 659, 148 So. 909. And, as heretofore shown, the uncontradicted evidence in this case negatives the fact that an unconditional credit in the sense just mentioned was authorized by the claimant. It is apparent, accordingly, that the claim filed herein comes within the terms of the statute. Under the specific provisions thereof, the money need not be traced into a specific fund, but the owner is given a lien on all of the assets of the bank. We cannot, accordingly, see any escape from the conclusion that the judgment of the trial court should be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.