Edwin J. WITZENBURGER, State Treasurer of the State of Wyoming, Appellant (Defendant below),

v.

STATE of Wyoming ex rel. WYOMING COMMUNITY DEVELOPMENT AUTHORITY, Appellee (Plaintiff below),

v.

STATE of Wyoming, Appellee (Intervenor below).

No. 4788.

Supreme Court of Wyoming.

April 26, 1978.

V. Frank Mendicino, Atty. Gen., Peter J. Mulvaney, Sr. Asst. Atty. Gen., Cheyenne, and James B. Daley, Dawson, Nagel, Sherman & Howard, Denver, Colo., signed the petition for rehearing and brief.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

■ By a petition for rehearing filed on behalf of the State of Wyoming by the attorney general, we are asked to declare that our decision in the case is prospective only and not retroactive. In doing so, the petition is making application to this court to, in effect, judicially validate $27,645,-000.00 in Wyoming Capital Facilities Bonds, 1977 Series A, precipitously issued during the pendency of this appeal under the provisions of Chapter 155, Session Laws of Wyoming, 1977, by the Capitol Building Commission. Neither that Act nor that bond issue nor that state entity nor any question of retroactivity were before this court for

consideration. By attaching a copy to the petition for rehearing, an attempt is made to introduce into the record the official statement, in the nature of a prospectus, published to announce the availability of Wyoming Capital Facilities Bonds and the fact that such bonds were issued. On a petition for rehearing, this court will not notice matters entirely outside the record of the case before it. *Braten v. Baker*, 1958, 78 Wyo. 273, 323 P.2d 929, reh. den., 78 Wyo. 300, 325 P.2d 880; *Wantulok v. Wantulok*, 1950, 67 Wyo. 22, 214 P.2d 477, 21 A.L.R.2d 572, reh. den., 67 Wyo. 45, 223 P.2d 1030; 5 C.J.S. Appeal & Error § 1420, p. 547; 5 Am.Jur.2d, Appeal and Error, § 986, pp. 411–412.

■ We will not generally, on a petition for rehearing, consider any new issues not raised in the original hearing before the district court or this court. *Mayor v. Board of Land Com'rs.*, 1948, 64 Wyo. 409, 192 P.2d 403, reh. den., 64 Wyo. 430, 195 P.2d 752; *Walgreen Co. v. State Board of Equalization*, 1946, 62 Wyo. 288, 166 P.2d 960, reh. den., 62 Wyo. 336, 169 P.2d 76; *First Nat. Bank of Green River v. Ennis*, 1932, 44 Wyo. 497, 14 P.2d 201, reh. den., 45 Wyo. 165, 15 P.2d 1111, and precedent in *First National Bank* there cited. The new issue presented is the validity of the Wyoming Capital Facilities Bonds.

■ The petition for rehearing argues that we created new law and, therefore, under pertinent decisions, the decision should be prospective. Our decision in this case did not change any existing jurisprudence with respect to the creation of indebtedness of the State of Wyoming. Paraphrasing from *Chevron Oil Co. v. Huson*, 1971, 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306, cited by petitioners, no new principle of law was established by overruling past precedent. We did not overrule *Banner v. City of Laramie*, 1955, 74 Wyo. 429, 289 P.2d 922, upon which the Wyoming Community Development Authority relied; as we succinctly pointed out it was just simply inapplicable to the case because it failed to deal with state indebt-

edness issues. The result we reached was foreshadowed and not a result of first impression, in the light of the abundantly clear prohibition expressed in §§ 1 and 2, Article XVI, Wyoming Constitution, along with the declarations in *Arnold v. Bond,* 1934, 47 Wyo. 236, 34 P.2d 28, and *Laverents v. City of Cheyenne,* 1950, 67 Wyo. 187, 217 P.2d 877. We see no inequity in requiring constitutional compliance, though it may result in some momentary uncomfortable distress and require fiscal readjustment, which we shall point out has been accomplished.

■ Additionally, there is no justiciable issue before the court as required in actions for declaratory judgment. In the case of the Wyoming Community Development Authority, the state treasurer refused to certify the bonds of the Authority to the extent that they would not constitute an indebtedness of the State. In the case of the Wyoming Capital Facilities Bonds, which we are now asked to obliquely approve, he certified unhesitatingly and seems to have relied on the opinion of bond counsel and the attorney general that the Community Development Authority "litigation will not have any effect on the availability of the Pledged Tax. Revenues for payment of the Series A Bonds."[1] It is now urged that the litigation does, in fact, have an effect on the availability of pledged tax revenues. We do not understand the obvious inconsistencies of position but it does disclose that there is only one party before the court on the questions offered for rehearing. In *Brimmer v. Thomson,* Wyo.1974, 521 P.2d 574, this court found that there existed adversary positions and quoted favorably from *Sorenson v. City of Bellingham,* 1972, 80 Wash.2d 547, 496 P.2d 512, 517, that though matters before the court may be of great public moment, there is another element, without which a justiciable controversy does not exist and that court said:

"'* * * Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.'"

■ We cannot in good judicial conscience permit a presentation in which there ·is no genuine dispute between the litigants. The dissent would also inject into this proceeding the interests of new parties, such as schools, community colleges and other political subdivisions which might have outstanding bonds issued under some legislative Act about which we have nothing in the record nor anyone to represent adversary interests. See also *Cranston v. Thomson,* Wyo.1975, 530 P.2d 726, where it was declared that great public interest alone is insufficient to warrant granting a declaratory judgment.

The petition for rehearing implores us to consider that the Wyoming Capital Facilities Bonds were issued in good faith. We would set a dangerous precedent to decide cases ex parte, after the fact, on good faith. With rare exceptions, every party coming before us with a position does so in good faith. With equally rare exceptions, someone must with disappointment find we must disagree with their good faith points of view.

■ Finally, the question of damage to the .credit of the State is moot because the legislature in its 1978 session has provided remedial legislation, first by amending W.S. 39–6–302,[2] W.S.1977, Enrolled Act No. 38, House of Representatives, approved by the Governor March 21, 1978, which apparently authorized the pledging of future excise tax revenue for payment of capital savings bonds within such authorization and added the following to subsection (f):

"* * * Unless at the next general election the qualified electors of the state

---

1. As stated in the prospectus, a copy of which was incorporated as a part of the petition for rehearing.

2. Section 39–227.12(d), W.S.1977, Interim Supplement.

of Wyoming approve the use of future state mineral severance taxes to repay the indebtedness incurred by the state of Wyoming by the issuance of Wyoming capital facilities bonds, 1977, series A, or unless a final, unappealable court decision of rehearing of an existing case affecting the validity of the bonds upholds the legality of the financing of the bonds, then on January 2, 1979, any revenues dedicated to the repayment of the state of Wyoming capital facility bonds, 1977 series A, dated August 1, 1977, and any revenues dedicated to a reserve or redemption account for the bonds shall be transferred to the general fund until the sum of twenty-nine million one hundred thirteen thousand five hundred ninety-one dollars ($29,113,591.00) has been deposited in the general fund. Thereafter, the revenues shall be deposited in the capital facilities revenue account within the earmarked revenue fund."

Then, by what seems to be companion legislation, the legislature in its 1978 session, by Enrolled Act No. 42, House of Representatives, approved by the governor March 15, 1978, provides an appropriation of moneys from currently available funds to repurchase and redeem the Wyoming Capital Facilities Bonds issued in accordance with the plan there provided. That Act goes on also to make ready for the contingency of this court in some way approving or validating the Wyoming Capital Facilities Bonds issued, never a matter properly presented in the case before us.

We have great admiration for the legislature in its prompt and willing action directed to protection of the State's credit standing. We cannot see how any creditor or any other person contemplating investment in securities of the State can doubt the good image and reputation of the State of Wyoming when its legislature tenders a return of private funds expended, creates an account with money in it to carry out the State's promise and grants an alternative to the investor to continue his investment with no risk whatsoever, with the bonds secured by cash or its equivalent on deposit.

We will not in any manner in this case, either directly or indirectly, make any holding which in any fashion suggests that the Wyoming Capital Facilities Bonds were either valid or invalid. They were not and are not now appropriately before us for decision.

Petition for rehearing denied.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice joins.

I would either have granted the petition for rehearing, in order that this court might consider whether or not its decision should be applied prospectively, or I would have announced in the order denying the petition that the Witzenburger decision will have prospective application only.

While I agree that, when considering a petition for rehearing, an appellate court should not notice matters outside the record, and *generally* should not concern itself with new issues, I could have justified my decision upon the grounds that exceptional circumstances are presented here and/or the public interest in this case is so overwhelming as to call for and receive extraordinary attention. See, *In re Riverton State Bank*, 47 Wyo. 469, 38 P.2d 603, rehearing granted 48 Wyo. 372, 49 P.2d 637. See, also, 5 C.J.S. Appeal & Error § 1421, pp. 549–550, where it is said that exceptions to the general rule of rehearing have been permitted in cases where, inter alia, there are exceptional circumstances or the public interest is involved. We found such an exceptional circumstance in *Steffey v. City of Casper, Wyo.*, 357 P.2d 456, rehearing granted 358 P.2d 951, where we were convinced that certain aspects of the original decision required clarification. In the *Riverton State Bank* case, the question was whether a certain depositor had a preferred claim on the defunct bank's assets under a Wyoming statute. The lower court held he did and we affirmed. In a petition for rehearing, it was alleged *for the first time* that the statute was unconstitutional. Justice Blume said:

"Appellant filed a petition for rehearing, based principally on the ground that the law just mentioned is unconstitutional. That point was not presented upon the former hearing, and on that account we should ordinarily have refused a rehearing. *Brewer v. Folsom Brothers*, 43 Wyo. 517, 7 P.2d 224. *Because of the public interest involved*, however, we deemed it best to make an exception in this case, and the petition for rehearing was granted. . . ." [Emphasis supplied]

Even if it were to be determined that the public interest was not so great as to warrant the invocation of the *Riverton State Bank* rule, or that we were not concerned in a case involving exceptional circumstances (either of which conclusion would be impossible for me to reach), I would, nevertheless, not find it necessary here to rely upon either of these concepts in order to come to grips with the prospectivity issue. Rather, a decision on prospectivity should be viewed in this litigation as a necessary and integral part of the opinion which has been inadvertently omitted, but which is, nevertheless, necessary to a proper resolution of all of the questions and issues presented. See *Oroz v. Board of County Commissioners of Carbon County,* Wyo., 575 P.2d 1155, where, in judicially abrogating governmental immunity for political subdivisions, the court, in the interest of finally resolving all attendant and ancillary questions, applied its decision prospectively, even though *that* issue had not been specifically raised by the parties.

Within its discretionary power, a state court of last resort may, in defining the limits of adherence to precedent, make a choice on the question of whether or not a decision should be applied prospectively or retrospectively. *Ostwald v. State*, Wyo., 538 P.2d 1298, 1302; *Flores v. State*, Wyo., 572 P.2d 746, 747. In addition to the grounds heretofore mentioned for granting rehearing relief, the court could also re-spond to the petition by adopting the rule that there "is a reasonable probability that the court may have . . . overlooked some important question or matter necessary to a correct decision." *Elmer v. State*, Wyo., 466 P.2d 375, 376, cert. den., 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82.

To avoid the question of prospective or retrospective application, as the majority opinion does, through the device of announcing that no new principle of law was established by Witzenburger since *Banner v. City of Laramie*, 74 Wyo. 429, 289 P.2d 922, was not *expressly* rejected in the Witzenburger opinion, is to elevate form over substance.[1] It is readily apparent to me that attorneys for the State and its political subdivisions—including school districts, community colleges, cities, counties and all other public entities—could have, in absolute good professional faith, relied upon our decision in *Banner* in advising their various clients that a public bonded indebtedness may, in this State, be secured and funded by the pledge of future excise tax receipts without creating a constitutional debt. That is what *Banner* held!! Why shouldn't lawyers rely upon that rule of law as announced by this court? They could not be expected to gaze into a crystal ball and foresee that we would one day deny Banner without overruling it, thus presenting the disastrous anomaly of precluding an invocation of the prospective-application rule. Whether such reliance upon *Banner* was reasonable goes to the merits of this petition for rehearing and should have been considered by this court.

We do vast disservice to those seeking to arrange state and local government financing by suggesting that *Banner* still has some measure of vitality after the Witzenburger decision. If I could have been the decision-maker here, I would, at least, have considered overruling *Banner*, thereby avoiding future confusion, while, at the same time, making room for the concept that the court's latest decision announced

---

1. *Banner v. City of Laramie* stands for the proposition that the pledge of future cigarette tax receipts to secure bonds for a storm sewer improvement does not constitute a debt in the constitutional sense.

new principles of law which could only have prospective effect. In Witzenburger, this court either implicitly overruled *Banner* or it announced new principles of law. Either way, consideration should have been given to a prospective ruling. In order to do this, it would not be necessary to consider the Capital Facilities Bonds or any other matters technically outside the Witzenburger record. It would only demand that we act realistically and acknowledge that the principles announced in the Witzenburger decision will have a significant impact upon all levels of state and local government financing—past, present and future.

I am also forced to the conclusion that certain of the reasoning by which this petition is being denied does violence to the rehearing standards embraced by the majority. In order to find that there is no justiciable issue presented, or that the issue presented is moot, the majority finds it necessary to consider matters outside the Witzenburger record and makes factual assumptions concerning which we have no record knowledge. For example, the majority considers representations contained in the Capital Facilities Bonds prospectus—in order to show there was no dispute over the viability of those bonds. Furthermore, the majority assumes that the recent curative legislation has been activated.

More importantly, to require some kind of an *additional* dispute between the litigants—in order to grant a petition for rehearing solely related to the inherent issue of prospectivity—as the majority opinion does—is to virtually prohibit rehearings on decisions in cases where the parties have sought a declaratory judgment. The original dispute between the litigants is wholly sufficient to satisfy the justiciability requirement. The petitioner herein is not seeking a *new* declaratory judgment—he is merely asking us to clarify our decision—to make it more complete and, therefore, more correct and usable. That request, for me, falls within the grounds for a rehearing set forth by this court in *Elmer v. State*, supra, and *Steffey v. City of Casper*, supra.

It is my judgment that this case cries out for relief through this court's order emanating from a rehearing, or through its order denying the petition, and, in either event, the ultimate ruling should be that the Witzenburger decision will have prospective application only. We cannot forget—I think—that lawyers have for years been justifiably relying upon their interpretation of *Banner* as standing for the proposition that revenue bonds are capable of being funded in Wyoming through excise taxation. Now the State of Wyoming—the schools—the community colleges, cities, towns, counties, and other state and county subdivisions, find themselves in dire fiscal straits because their bonds are in jeopardy as a result of professional good-faith reliance upon one of this court's opinions. The State's bonding credit is under attack in the eastern money markets and, in order to bring some measure of relief to the problem, we have only to say—in one way or another—that the Witzenburger decision is to be applied prospectively only. The natural and logical effect of that pronouncement would be, of course, that the bonds heretofore issued and sold in reliance upon *Banner,* would not be adversely affected by our decision in Witzenburger.

I cannot, for the reasons set out herein, join in a majority opinion which refuses the relief which I have outlined and which—I think—is as surely warranted as it is needed, and which is, by this court's precedent, authorized.