**WESTON COUNTY HOSPITAL JOINT POWERS BOARD,**
Appellant (Plaintiff),

v.

**WESTATES CONSTRUCTION COMPANY, Appellee**
(Defendant).

No. 90–99.

Supreme Court of Wyoming.

Nov. 20, 1992.

Raymond B. Hunkins, Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

Joseph E. Hallock, Banks, Johnson, Wolfe & Hallock, Gillette, and John J. Delaney, Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, S.D., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

THOMAS, Justice.

The set of questions that the court must determine in resolving this appeal is:

1. Whether a joint powers board, created pursuant to the provisions of the Wyoming Joint Powers Act, Wyo.Stat. §§ 16–1–102 to –109 (1990), is a "political subdivision" as to which the requirements of Article 16, Section 7 of the Constitution of the State of Wyoming must be met before a bill, claim, account or demand can be audited, allowed, or paid?

2. Whether a joint powers board is a "governmental entity" so that a claimant must satisfy the provisions of Wyo.Stat. § 1–39–113 (1988)?

3. Whether, assuming that a joint powers board is a "political subdivision" or a "governmental entity," the record demonstrates satisfaction of the constitutional or statutory requirements?

The trial court ruled that the joint powers board was not a "political subdivision;" there had been no violation of the provisions of Wyo.Stat. § 1–39–113 (1988) because the conduct of arbitration proceedings was a condition precedent to the accrual of any claim; the requirements of § 1–39–113 were substantially satisfied; and the award of the arbitrators should be confirmed. Consistently with the trial court, we hold that a joint powers board is not a "political subdivision;" a joint powers

* Chief Justice at time of oral argument.

board is a "governmental entity" and the provisions of § 1–39–113 must be satisfied; in the circumstances of this case in which the action was instituted by the joint powers board, a waiver of compliance with the notice requirements must be acknowledged; and the award of the arbitrators appropriately and correctly was confirmed. We affirm the decision of the trial court.

Weston County Hospital Joint Powers Board (Board), as appellant, frames these issues for this appeal:

I. Whether the district court had jurisdiction to confirm an arbitration award on a claim against a Wyoming governmental entity where the claimant neglected and refused to comply with the requisite procedures mandated by the Wyoming Constitution and the Wyoming Governmental Claims Act?

II. Whether the district court erred in confirming an arbitration award against a Wyoming public entity where the claimant failed to provide documentation sufficient for the public entity to examine the claim by means of a constitutionally contemplated and court-ordered audit?

III. Whether the district court erred in confirming an arbitration award which contained manifest mistakes of, and disregard for, Wyoming law, resulting in an award which exceeded the arbitration panel's powers?

IV. Whether the district court erred in failing to modify the arbitration award to incorporate the installment payment provisions of the Wyoming Governmental Claims Act?

Westates Construction Company (Westates), as appellee and the defendant in the court below, sets forth this statement of the issues:

I. Whether the district court had jurisdiction to confirm an arbitration award in favor of a contractor and against a joint powers board?

 A. Whether compliance with Article 16, Section 7, of the Wyoming Constitution, pertaining to political subdivisions, is a prerequisite to the arbitration of a contractor's claim against a hospital joint powers board?

 B. Whether the 1984 Wyoming Governmental Claims Act, W.S. § 1–39–101, *et seq.*, prohibits arbitration of damage claims between a contractor and a joint powers board even though contract documents prepared by the joint powers board require arbitration to resolve such claims?

 C. Whether Westates' claims were timely filed?

II. Whether the district court erred in confirming the arbitration award?

III. Whether the district court erred in refusing to modify the award to incorporate the installment provisions of the Governmental Claims Act?

The Board was created pursuant to the provisions of the Wyoming Joint Powers Act, Wyo.Stat. §§ 16–1–102 to –109 (1990), by the towns of Upton and Newcastle together with Weston County. There is no dispute that these three entities all are "political subdivisions." Westates, a privately owned Wyoming corporation, in August of 1984, entered into an agreement with the Board pursuant to which Westates was to construct a public hospital in Newcastle. The contract, which was drafted by the Board, provided that Westates was to pursue any and all disputes arising from the contract through arbitration proceedings before being allowed access to the courts.

The hospital construction project was substantially completed in May of 1986 and, in October of that year, Westates sought additional compensation of $682,-369.59. Westates presented its claim for this amount in an unverified and unsigned letter that was sent by its attorney to a member of the Board. The claim for additional compensation was refused, and Westates, pursuant to the agreement, sought arbitration through the American Arbitration Association.

Within a short time, the Board filed an action in the district court seeking to quash further proceedings. The Board contended that the provisions of the Wyoming Governmental Claims Act, Wyo.Stat. §§ 1–39–

101 to −120 (1988), inhibited the enforcement of the arbitration clause incorporated in the contract. The district court, after considering the arguments of the parties, ruled that the Wyoming Governmental Claims Act did not prevent enforcement of the arbitration clause and that arbitration was appropriate under the circumstances. The Board appealed that ruling to this court, but its appeal was dismissed in June of 1988 on the ground that the order of the district court was not a final order, as defined in Wyo.R.App.P. 1.05.

After dismissal of its appeal, the Board requested an audit of Westates' records. When Westates refused, the Board filed an "Application for Order Authorizing Conduct of an Audit" in the district court. The district court, in accordance with the stipulation presented by the parties, incorporated that request into an order, and the Board's independent auditor accomplished the audit. The end result of the audit was that all but $4,000 of the additional compensation demanded by Westates was rejected.

The arbitration proceedings were conducted in February and May of 1989. After its case-in-chief was completed, Westates presented a revised, and diminished, summary of its claim so as to conform it to the evidence. Immediately following the Board's argument in the arbitration proceedings, Westates adjusted the claim once again. The final product of the arbitration was an award of $99,905 in favor of Westates. Promptly thereafter, Westates filed its "Motion for Order Confirming Arbitration Award" with the district court. The Board, sometime later, filed its "Application to Vacate, Modify or Correct Arbitration Award." On March 1, 1990, the district court, after ruling that the Board was not a "political subdivision" and that Westates' claim first accrued when the American Arbitration Association entered its award, denied the Board's motion. The court entered a judgment for Westates in the amount determined by the arbitration. The Board has appealed from that order.

The major premise for the Board's argument is found in its contention that the district court was without jurisdiction to rule in the case because Westates had not followed the process established by Wyo. Const. art. 16, § 7 as it was required to do. Article 16, Section 7 of the Constitution of the State of Wyoming provides as follows:

**Payment of public money.**

No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the **state, or any county or political subdivision,** shall be audited, allowed or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or officers whose duty it may be to audit the same (emphasis added).

Concretely, the Board asserts that Westates had a duty to present a "full itemized statement in writing, certified to under penalty of perjury," to the Board's officer or officers, whose duty it was to audit the same in accordance with the requirements of Wyo. Const. art. 16, § 7, before proceeding to arbitration. The Board then contends that Westates is now foreclosed from any remedy by the inherent statute of limitations found in § 1–39–113, because more than two years have passed since the hospital project was completed, and no such document has been presented. *Cf. Dee v. Laramie County,* 666 P.2d 957 (Wyo.1983) (court lacks jurisdiction in action against government entity when no claim has been filed pursuant to § 1–39–113). The Board couples to this argument a contention that the only effective forum in which Westates could have pursued its rejected claim was the district court of the Sixth Judicial District in and for Weston County, and that any resolution offered by virtue of the arbitration proceedings was inefficacious because the arbitration award was confirmed by a court lacking jurisdiction. The concomitant of this argument is that the arbitration clause included in the contract, even though it was fully complied with, is not binding upon the Board.

The Board was established pursuant to the Wyoming Joint Powers Act, Wyo.Stat. §§ 16–1–102 to −109 (1990), and, being neither the State nor a county, the Board

must be a "political subdivision" in order to insist upon compliance with the requirements of the constitution. If the Board is not a "political subdivision," it must defend the confirmation of the arbitration upon some alternative ground.

The criteria for identifying a "political subdivision" are found in *Witzenburger v. State ex rel. Wyoming Community Development Authority*, 575 P.2d 1100, *reh'rg denied*, 577 P.2d 1386 (Wyo.1978). There, we concluded that a " 'political subdivision' must be an entity of the same kind or class as a county, city, township, town or school district," *Witzenburger*, 575 P.2d at 1112, and that it would be characterized by certain distinctive badges including a prescribed geographic area, a requirement for having officers duly elected by the inhabitants of that area at a public election, and a legal power to levy and collect taxes. *Witzenburger*. This is still the applicable test. While the list we have recited is not all-inclusive, any "body politic" not possessing at least these three basic attributes cannot be a "political subdivision." *See Witzenburger*.

After examining the Wyoming Joint Powers Act, we find that two of the *Witzenburger* criteria clearly cannot be ascribed to the Board. First: The Board will have no elected officials. All its members, including any member who may be assigned the role of an officer, must be appointed by the governing bodies of the participating agencies. Wyo.Stat. § 16–1–106(a), (b). In this instance, the participating agencies are the towns of Upton and Newcastle and Weston County. Second: The Board has no independent power to tax. Wyo.Stat. § 16–1–107. Further, although not proscribed by the Wyoming Joint Powers Act as are the other two requisite criteria, the record does not demonstrate any specific territorial or geographic boundaries within which the Board is contained or has the authority to function. Wyo.Stat. § 16–1–101 to –109.

We hold that the Board does not comply with even the threshold criteria for identification as a "political subdivision," as articulated in *Witzenburger*, and we need not review the claims of the Board concerning the constitutional demands and Westates' alleged failure to meet those requirements. Wyo.Const. art. 16, § 7 does not apply in this instance. The Board's argument that the district court lacked jurisdiction because of the failure to comply with those constitutional mandates, including those requiring itemization and certification under penalty of perjury, is without merit since the Board is not a "political subdivision."

The Board offers an alternative argument for identifying it as a "political subdivision." It cites *Frank v. City of Cody*, 572 P.2d 1106 (Wyo.1977), for the proposition, which certainly is sound, that nothing prohibits existing "political subdivisions from joining together as allowed by the Joint Powers Act." The argument the Board advances is that any such aggregate of "political subdivisions" inherently must be recognized as a "political subdivision." This sophisticated argument is an application of the adage that "the whole is equal to the sum of its parts." In addition, the further contention is that any separate body, board, or agency created by another entity or entities must be for all intents and purposes essentially the same as the entity or entities out of which it is formed. The conclusion then asserted is that the Board, no matter how it is formed, must be perceived as possessed of the cumulative powers, rights, and constitutional or statutory protection available to any of its individual constituents. Stated another way, the Board argues that any claim or demand directed to the Board is a claim or demand addressed to its participating agencies, of which one is a county and the other two are political subdivisions.

The fallacy in this contention is the assumption that, by the creation of a joint powers board, the participating entities in some manner merge so as to form a body that is essentially the equivalent of their individual identities. This is not the case. The participating entities, whatever they may be, do not merge. Instead, they simply agree to create and support a different and independently managed organization that exists and functions for their mutual

benefit. In doing so, they do not surrender or delegate any of their individual rights and prerogatives.

In advancing this theory, the Board apparently ignores the fact that many, if not most, special purpose governmental agencies or bodies, such as the Board, are created specifically to establish a separate organization that, for whatever reasons, is independent of its participants. These new entities function to pool resources and establish a buffer isolating the participating entities. It follows that an attack on the new body is not an attack on the participating entities and, consequently, the only protections or powers it may need, or legally has, are those specifically identified in its enabling statute and other controlling authorities. The very existence of the Joint Powers Act, which defines a discrete entity that is independent of the participating entities, supports this resolution and is contrary to the contention of the Board. We hold that an independent "special purpose" body or unit created through an arrangement between other governmental entities, like a joint powers board, does not assume the collective characteristics, or the rights and responsibilities of the individual participants. A joint powers board is what the Wyoming Joint Powers Act, and other controlling authority, say it is, without more. It is not an entity that is possessed of the collective characteristics and powers of those entities that created it. A "governmental entity" that is formed by a coalition of "political subdivisions" is not another "political subdivision," unless it somehow is possessed of the criteria identified in *Witzenburger*. Perhaps this point is sufficiently emphasized by noting that Westates, in apparent recognition of this distinction, sought its remedy, not from the towns of Upton and Newcastle and Weston County which were the participating entities, but from the Board itself.

■ Another suggestion offered by the Board, is that a "governmental entity" and a "political subdivision" are equivalent concepts. Possibly, this contention is suggested by § 1–39–103(a)(i) and (ii). The first subparagraph defines governmental enti-

ties to include the State, the University of Wyoming, and any local government. The second subparagraph defines local government and includes joint powers boards, as well as all political subdivisions of the state among the numerous bodies identified. It is clear that, using the broad definition of a governmental entity, any political subdivision is a governmental entity. The inverse, however, is not true and a governmental entity does not necessarily constitute a political subdivision. Perhaps the best demonstration of that verity is that it would be unnecessary to include "political subdivision" in the definition of § 1–39–103(a)(ii) if any governmental entity were a political subdivision. A conclusion such as that suggested with respect to the qualification of a governmental entity as a political subdivision would rob the rationale of this court in *Witzenburger* of any efficacy.

■ We turn then to the argument that Westates was required to comply with the Wyoming Governmental Claims Act since the Board clearly is a governmental entity within the definition found in § 1–39–103(a)(i). The Constitution of the State of Wyoming provides that no suit may be maintained against either the state or its various governmental components, including any and all "governmental entities," without the consent and direction of the legislature. Wyo.Const. art. 1, § 8; *Worthington v. State*, 598 P.2d 796 (Wyo.1979); *Retail Clerks Local 187 AFL–CIO v. University of Wyoming*, 531 P.2d 884 (1975); *Hjorth Royalty Company v. Trustees of University of Wyoming*, 30 Wyo. 309, 222 P. 9 (1924). Such consent must be formalized by statute, the mechanism by which our legislature articulates policy. *Worthington*. In 1979, the legislature adopted the Wyoming Governmental Claims Act, which permits suits against the state if certain explicitly stated conditions have been complied with. Wyo.Stat. § 1–39–102(a). Because this statute abrogates common law, it is to be strictly construed. *Reliance Insurance Company v. Chevron, U.S.A., Inc.*, 713 P.2d 766 (Wyo.1986).

■ The argument of the Board on this issue, focusing upon § 1–39–113, is

that Westates' claim accrued in May of 1986, when the hospital construction project had been substantially completed, and it follows that any claim made by Westates should have been presented within two years of that date. Claims presented subsequent to the cut-off date, the Board argues, are a nullity and of no effect. The district court ruled to the contrary, relying upon the agreement entered into by the parties. It held that no claim existed in this instance until the results of the arbitration, a contractual condition precedent, demonstrated either an entitlement or rejection of Westates' claim. We agree with the ruling of the district court. See *Westates Construction Company v. City of Cheyenne*, 775 P.2d 502 (Wyo.1989); *Brasel & Sims Construction Company v. State Highway Commission*, 655 P.2d 265 (Wyo.1982).

The pertinent statute provides, in part, as follows:

**Claims procedure.**

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo.Stat. § 1–39–113 (Supp.1992).

Neither this provision nor any other provision of the Wyoming Governmental Claims Act prohibits or encourages arbitration as a device for resolving disputes between governmental entities and those parties with whom they contract or otherwise do business. *See Hot Springs School District No. 1 v. Strube Construction Company*, 715 P.2d 540 (Wyo.1986); *American National Bank of Denver v. Cheyenne Housing Authority*, 562 P.2d 1017 (Wyo. 1977). Although not explicitly mentioned in the statute, "[a]rbitration is favored by public policy in this court," *Hot Springs*, 715 P.2d at 547, since it does provide a means for inexpensive and expeditious resolution of various claims and controversies without the need for resort to a formal tribunal and its rigid adherence to rules of law. *Jackson State Bank v. Homar*, 837 P.2d 1081 (Wyo.1992); *Hot Springs; T & M Properties v. ZVFK Architects and Planners*, 661 P.2d 1040 (Wyo.1983); *Matter of Town of Greybull*, 560 P.2d 1172 (Wyo.1977). Consistently, our predilection, especially when the parties have agreed to arbitration as they did in this case, is to uphold the results of arbitration if we can determine any legal or equitable way so to do. *Northern Supply; Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation*, 376 P.2d 640 (Wyo.1962).

Ultimately, as the district court wisely perceived, resolution of this issue hinges completely upon the date when Westates' claim accrued. If it accrued in May of 1986, as the Board contends, it is untimely, and it is not in a form prescribed by the statute. The result should be dismissal as a matter of law. *See Dee*, 666 P.2d 957. On the other hand, if the Westates' claim first accrued upon completion of the arbitration proceedings in May of 1989, Westates' filing would be timely, and the only remaining concern would be questions with respect to the form of the claim. The claim is found in this record in the motion to confirm arbitration presented to the district court, and the question would be whether that motion manifests sufficient compliance with the Act under the unique circumstances of this case.

■ We conclude that the Wyoming Governmental Claims Act, although providing the exclusive means for resolving existing claims against government entities, does not serve to negate contractual provisions moving toward a similar goal. We hold that the best, and perhaps the only, way to reconcile these provisions is to re-

gard a claim against a governmental entity as not having accrued until all contractual terms creating a condition precedent have been exhausted, as the district court did. *See Westates.* Then, and not before, the explicit directives of the Wyoming Governmental Claims Act will control. Consequently, we hold that Westates' claim against the Board accrued upon completion of the arbitration in May of 1989.

 Our resolution of this issue also responds to the contention of the Board that the case was not heard in a proper forum since, by the district court's confirmation of arbitration, the controversy actually was resolved in the district court subsequent to the compliance by the parties with the contractual condition specifying arbitration. The district court, contrary to the arguments of the Board, did have jurisdiction over the matter because Westates' claim was filed in a timely manner. In so holding, we recognize, and we agree with the Board, that the American Arbitration Association lacks jurisdiction to enter a binding award against a governmental entity. *See* Wyo.Stat. §§ 1–36–101 to –119 (1988). For that reason, it was essential that Westates seek confirmation of the award from the district court as it did. The lack of authority on the part of the arbitrators to enter a binding award had no effect on the jurisdiction of the district court. The claim was properly presented by Westates' motion, and the district court had the power to rule.

As we have indicated, the necessity of a claim raises the question whether Westates' motion to confirm arbitration, filed by it in the district court, was a sufficient claim in the format required by the statute to procedurally comply with the Wyoming Governmental Claims Act. If it was not, even though Westates' motion was timely, the district court still would be without jurisdiction to rule on it. The district court, after considering the issue, concluded that Westates' motion sufficiently complied with the statutory requirements. We agree with this ruling.

 The statute requires that an accrued claim must be presented to the gov-

ernmental entity as an itemized statement in writing. Wyo.Stat. § 1–39–113. Normally, the proper procedure for the presentation of such a claim would be to first submit the arbitration results to the Board for satisfaction, instead of immediately seeking relief directly from the district court. In most instances, a failure to proceed in this manner, that is presenting the arbitration result as a claim in accordance with the statutes, could be fatal to any remedy. This case is different, however, because the Board initiated this action in the district court well before Westates' claim had accrued, and the Board then participated in the arbitration proceedings. Since this case is different from the normal one, we agree that the Board, by its actions in the lower court, waived its right to any procedural defenses regarding notice that it otherwise normally could assert.

 In so deciding, we hold that the Board had adequate notice of the claim and that the law does not require Westates, or any other claimant similarly situated, to engage in the futile act of providing further documentation under such circumstances. A contrary result would indeed elevate form over substance. Westates sufficiently complied with the Governmental Claims Act under the circumstances of this case. We add a caveat to the members of the Wyoming Bar, however. Our holding in this case is not to be broadly construed as an invitation to avoid strict adherence to the terms of the Wyoming Governmental Claims Act. In this regard, we also recognize that Westates' unverified and unsigned letter to a member of the Board would have complied with the statute, which simply requires the presentation to the entity of an itemized statement in writing, had there been an accrued claim at the time that the letter was submitted to the member of the Board.

 In its second issue, the Board questions the action of the district court in confirming an arbitration award where Westates failed to provide documentation sufficient to allow the Board to examine the claim by means of a "constitutionally contemplated and court-ordered audit."

We fail to discern the relevance of this issue or how it might affect the outcome of this appeal. We already have tested the constitutional applications of Wyo.Const. art. 16, § 7, holding that they do not apply in this case. We would be remiss if we then endeavored to stretch those requirements to encompass concerns over the district court's order with respect to an audit. Even if we assume that the record would support Westates' alleged failure in this regard, the Board does not cite authority nor provide cogent legal argument to explain why such a failure would justify either a reversal or any other remedy in this case. Lacking such assistance, we conclude we should not consider the matter further. *See Dynan v. Rocky Mountain Federal Savings & Loan*, 792 P.2d 631 (Wyo.1990); *Burg v. Ruby Drilling Co.*, 783 P.2d 144 (Wyo.1989).

 The district court based its award on its confirmation of the results of the arbitration, not on the results of any audit. This renders the audit of little consequence, as the Board had ample opportunity to contest the accuracy of Westates' claim in the course of the arbitration proceedings. In addition, the proper procedure for the Board to have followed, if it was not satisfied with Westates' submission of documents, was a motion to compel in the district court. The record demonstrates no such motion, and we will not entertain this matter which is raised for the first time on appeal. *Matter of Estate of McCue*, 776 P.2d 742 (Wyo.1989); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925 (Wyo.1981); *Merritt v. Merritt*, 586 P.2d 550 (Wyo.1978).

The foregoing resolution of the first two issues asserted by the Board makes it unnecessary for us to address separately the Board's third issue. The question raised there, in its broadest form, is whether the district court erred in confirming an award that contained manifest errors of Wyoming law and exceeded the power of the arbitration panel. As we have set forth in our discussion, we do not find the errors of law alluded to, and the question of whether the panel of the American Arbitration Associa-

tion acted in excess of its powers is of no consequence because it was the district court, not the arbitration panel, that actually entered the order awarding compensation in this case. In addition, it is clear that Westates adequately complied with the Wyoming Governmental Claims Act, notwithstanding the contrary contentions offered by the Board.

The final issue asserted by the Board concerns the failure of the district court to modify the results of the arbitration so as to incorporate the "payment by installment" provisions of the Governmental Claims Act. In its decision letter, the district court did not address this issue directly and, instead, entered judgment for immediate payment of the entire amount of the award. The Board asserts that this must be error. The pertinent statutory provision is:

> (c) In addition to the procurement of insurance under subsection (b) of this section a local governmental entity may:
>
> * * * * * *
>
> (iv) Pay the judgment or settlement, with interest thereon, in not to exceed ten (10) annual installments in cases of undue hardship and levy not to exceed one (1) mill per year on the assessed value of the governmental entity for such purpose * * *."

Wyo.Stat. § 1–39–118(c)(iv) (1988).

 The essential argument by the Board in its brief is that the statute creates an option for the governmental entity pursuant to which, at its election, it may proceed to satisfy a judgment rendered against it in annual installments. The Board then notes the following testimony from its treasurer and chief fiscal officer and asserts its claim of hardship is justified by the testimony:

> That it would be an undue hardship on the Weston County Hospital Joint Powers Board to pay any judgment, but that the hardship would be substantially lessened if the Joint Powers Board were permitted to pay any judgment in ten annual payments as provided for in § 1–39–118.

The Board contends that this court, because the statutory conditions allegedly had been met and the Board is electing to exercise its option, should order payment of the judgment in ten annual payments, although with interest to Westates. We do not agree with this contention.

■ The issue of annual payments was presented to the district court, and the result of that presentation was that the district court responded by awarding the amount in full to Westates. The only conclusion we can draw is that the district court was not satisfied this was a case of undue hardship, and we will presume the district court did not find any undue hardship. That determination is one within the sound discretion of the trial court, and we will not overturn the finding on the issue in the absence of evidence of clear abuse of the court's discretion. The burden of providing that proof is assigned to the Board in this case, and the self-serving conclusion it offers as evidence, since it incorporates no facts whatsoever, does not meet that goal. In this situation, the district court has not acted in a manner which exceeds the bounds of reason and certainly could reasonably conclude as it did. *Dynan*, 792 P.2d 631, 640. The order for payment in full will not be amended.

In summary, we hold the district court had jurisdiction to confirm the arbitration award in this instance and did not err in doing so. Westates did not have to satisfy the constitutional requirements, and the requirements of the Wyoming Governmental Claims Act were satisfied. The decision of the district court, including the provision for payment in full, is affirmed.

CARDINE and URBIGKIT, JJ., file dissenting opinions.

CARDINE, Justice, dissenting.

I dissent from the analysis used by the majority in reaching the conclusion that the Weston County Hospital Joint Powers Board is not a "political subdivision" as contemplated by Art. 16 § 7 of the Wyoming Constitution. I object for several reasons. First, the majority misinterprets *Witzenburger*. Second, reliance on *Wit-*

*zenburger* alone is improper due to important factual differences in this case. Third, the test adopted by the majority will defeat the clear purpose of this section of the Wyoming Constitution.

In its cursory treatment of the applicable law concerning the constitutional definition for "political subdivision," the majority states:

> The criteria for identifying a "political subdivision" are found in *Witzenburger v. State ex rel. Wyoming Community Development Authority*, 575 P.2d 1100, *reh'rg denied*, 577 P.2d 1386 (Wyo.1978). There, we concluded that a " 'political subdivision' must be an entity of the same kind or class as a county, city, township, town or school district," *Witzenburger*, 575 P.2d at 1112, and that it would be characterized by certain distinctive badges including a prescribed geographic area, a requirement for having officers duly elected by the inhabitants of that area at a public election, and a legal power to levy and collect taxes. *Witzenburger*. This is still the applicable test. While the list we have recited is not all-inclusive, *any "body politic" not possessing at least these three basic attributes cannot be a "political subdivision." See Witzenburger.*

Maj. op. at 846 (emphasis added). *Witzenburger* did not establish a black letter rule as the majority concludes. Instead, what we said in *Witzenburger* was:

> We do not hold that the legislature cannot create a political subdivision but if it does, it must have those attributes of a political subdivision, within the contemplation of the Wyoming Constitution, such as we have outlined.

*Witzenburger*, 575 P.2d at 1114. The "attributes" outlined in *Witzenburger* are not as clear and constrained as the majority suggests. We said:

> Each [political subdivision] has a geographic area smaller than the state, each is organized with officers elected by its inhabitants to carry on a governmental function, having a local purpose and provision is made for the levy and assessment of taxes to finance those purposes.

*Witzenburger,* 575 P.2d at 1113. We gathered this list of attributes after scrutinizing our constitutional history and surveying precedent from other jurisdictions. *Witzenburger,* 575 P.2d at 1111–12. The test announced by the majority does not accurately portray and follow the general approach utilized by the *Witzenburger* court.

In addition, *Witzenburger* differs factually from this case. The sections at issue in *Witzenburger* were §§ 1 and 2 of Article 16, not § 7. *Witzenburger* involved the Wyoming Community Development Authority (WCDA) which was not formed under the Joint Powers Act. Unlike the WDCA, the Weston County Hospital Joint Powers Board does possess some of the characteristics outlined by Justice Raper in *Witzenburger.* The board encompasses a geographic area smaller than the state (Weston County), and it is organized to carry on a governmental function and a local purpose (providing accessible modern health care facilities). Although I agree that *Witzenburger* does offer guidance on the issue, by itself, it is not determinative.

In this particular case, the majority's analysis may not eviscerate the purpose of Art. 16 § 7 of the Wyoming Constitution; but, in the future, I fear it will. The purpose, providing opportunity to inspect all claims against the State, so as to prevent wasting public funds in useless litigation, is settled. The test adopted today will allow claims to be brought without sufficient warning against certain quasi-public entities who are not termed a "political subdivision" but who are essentially publicly funded.

Because the majority relies solely upon a test which it incorrectly elicits from *Witzenburger* and hastily resolves an issue of constitutional interpretation, I must dissent from the majority's analysis of "political subdivision" and the conclusion based upon that analysis.

URBIGKIT, Justice, dissenting.

The centerpiece for this decision envisions that when two admitted governmental subdivisions join together to operate an area hospital employing public resources for the citizens of the area, the resulting entity will no longer constitute a political subdivision. This is significant because the constitution of the state and the statutes enacted by the legislature provide protection to citizens who become responsible for the incurrence of obligations by governmental entities created for their benefit.

Leaving aside the advantages for the contractor who built the public facilities and the loss of control for the citizens through operation of the joint powers entity, I cannot find, in this circumstance, any justification for differentiating a political subdivision (each of the partners) from a governmental entity (the entity used for their combined public service). A governmental subdivision implies a defined territorial entity. This is clearly the result in the creation of a joint powers board when the two admitted political subdivisions join to perform a common interest public service. The entity will likely accrue financial responsibilities obligatory upon all of the citizens within the totality of their geographical area of responsibility. Residents, to get the service, will be required to provide the necessary funding to pay operational and constructional obligations.

I fail to perceive why hospital operations conducted under the purview of a joint powers board should not be accorded the same contracting protection for the citizens who are ultimately responsible as will be the case if the activity is separately operated by only one of them. There is no question that the county of Weston, exclusive of the towns of Upton and Newcastle, Wyoming, when combined with their territory, defines a specific taxpayer and political entity geographic territory and, equivalently, a statutorily-defined political subdivision to conduct a governmental function. The resulting hospital service is impressed with the public interest.

We should not misunderstand what this decision does. It accords to the citizens and taxpayers of local communities reduced protection from the conduct of any governmental activity through the usage of a joint powers board. I fail to see any providence or persuasion that the legisla-

ture intended to reduce protection for the citizenry by authorization of the creation of joint power districts. *Witzenburger v. State ex rel. Wyoming Community Development Authority,* 575 P.2d 1100 (Wyo. 1978) cannot provide a justification for this diminution of citizenry protection from their governmental entity incurrence of obligations. Such legislative history as might be available would reflect that the active, anguished and continued legislative opposition to the entity envisioned in the litigation discussed in *Witzenburger* found its views authenticated by the reversal decision of the Wyoming Supreme Court.

Constitutional rejection by this court of the open ended opportunity to incur liabilities ultimately chargeable to taxpayers considered in *Witzenburger* forcefully denies use of that precedent to approve this decision. I would find *Witzenburger* philosophically determinative that combining governmental entities into a joint powers board should not reduce protection for the citizens. Overtly, a joint powers board has a prescribed geographical area constituent of the totality of its contributors. The statute requires officers whose election is accommodated by action of the constituent partners. We should not kid ourselves that joint power boards have no authority to levy and collect taxes, albeit perhaps indirectly, since the responsibilities assumed by the participating governmental parties will ratchet down upon the citizens of their respective areas if the entity fails in operation.

The anguish and concern reflected by the three-to-two majority in *Witzenburger* and, in particular, the comments of Chief Justice Guthrie, do not lead us further in this review than to recognize that the judgment award countenanced by this decision constitutes a debt imposed upon each citizen of the constituent joint powers partners in their operation of an indispensable hospital. The debt appropriately considered by Chief Justice Guthrie in *Witzenburger* is no less a debt than is now created for the citizen users of the hospital by this decision.

The question with which we are presented is not whether the state legislature can create obligations that are not those of the state, *Witzenburger,* 575 P.2d at 1115, but whether the citizens of this state in 1889, by adoption of the Wyoming Constitution, provided a debt incurrence escape for modernized forms of entities used to provide general governmental services. Without regard for the new form selected for the operational entity, the taxpayer will, in one way or another, be assessed the responsibility to pay. Certainly, the very learned persons who joined together to write the Wyoming Constitution, or even the amendment permitted by a vote of the citizenry in 1970, contemplated no process where public funds and their use or misuse might be excepted from the requirement to "be audited, allowed or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or officers whose duty it may be to audit the same." Wyo. Const. art. 16, § 7. If plain meaning means anything, *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214 (Wyo.1991), those drafters intended certain unescapable responsibilities for the expenditures of public funds. Surely no one would dispute that joint powers boards encompass anything but a governmental operation in the utilization of public funds.

The result in this majority's decision is not particularly earth shaking in dollar amount. The pathway narrowing the constitutional protection afforded to our citizens is, however, of concern. We only invite ingenious ways to escape constitutional responsibility for the protection and preservation of our joint public assets.

In disagreement that this entity does not fall within the constitutional limitations and criteria for public protection, as does other governmental bodies, I respectfully dissent. The hospital management district, which is the subject matter of this litigation, should be accorded no different statutory or constitutional perspective regarding protection to the public interest than was afforded the State Highway Commission in *Utah Const. Co. v. State Highway Commission,* 45 Wyo. 403, 19 P.2d 951 (1933), or the University of Wyoming in *Board of Trustees of University of Wyoming v. Bell,* 662 P.2d

410 (Wyo.1983) and *Awe v. University of Wyoming*, 534 P.2d 97 (Wyo.1975). Frankly, it will take something more than a casual mathematician or perhaps a computer-controlled political scientist to assess among the two score or more separately defined political entities which districts constitute and are controlled by the constitution as political subdivisions and which are constitutionally excepted governmental entities.

I also do not agree with this majority's treatment of the clearly defined installment right of payment of the governmental entity. Somehow we make this a non-debt until it comes time to require taxpayer contribution. It was accurately recognized by appellant in its brief that "[t]he purpose of the constitutional provision is to protect governmental entities from improper or unsupported charges. *Houtz v. Board of Commissioners*, 11 Wyo. 152, 70 P. 840 (1902)."

It is interesting to recognize, as we pursue this issue of governmental responsibility and citizenry protection, that the contractor states in his brief:

> However, the confirmed award will not be financed by the Board, but rather by three distinct political entities with general taxing authority. Paying a share of an award of $100,000.00 is not likely to impose an "undue" hardship on any one of them. There is no evidence whatsoever that the payment of the award would require those entities to impose a "one mill" levy for even one year, much less ten.[1]

Without any question, a governmental entity as defined and protected by the Wyoming Governmental Claims Act, Wyo.Stat. § 1–39–101 through § 1–39–120 (1988 & Supp.1992), includes "joint powers boards."

Wyo.Stat. § 1–39–103(a)(ii). It seems incomprehensible, since the Governmental Claims Act is obviously defined to include this entity, that we now reject usage of the installment payment provision of Wyo.Stat. § 1–39–118(c)(iv).

Consequently, I dissent.

---

1. Once we leave the broad classifications of the state, the University of Wyoming, the State Highway Commission, the Game and Fish Commission, etc. and descend into the definable but not so certain geographical area excluding legislative districting of the county, the municipality, and the school or college district, we can then proceed into the weed and pest control districts and the sewer and water districts and down into the separate or joint governmental entities which provide hospital, recreational, water, and a considerable variety of additional community-operated public services. I think we simply fall into a hole and pull the top in after us when we attempt to define a governmental entity under joint power authorization to be something different than a governmental subdivision in order to foreclose regulations by payment and indebtedness limitations established in variant ways for the basic law of the state in the Wyoming Constitution.